In re Marvin J. NADLER, Debtor.

In re Harold E. RUBIN, Debtor.

Bankruptcy Nos. 90–40191–JFQ, 90–40192–JFQ.

United States Bankruptcy Court, D. Massachusetts.

Dec. 4, 1990.

Joseph Reinhardt, Hendel, Collins & Newton, Springfield, Mass., for Marvin J. Nadler, Harold E. Rubin, debtors.

Herbert Weinberg, Kaye, Fialkow, Richmond & Rothstein, Boston, Mass., for Orix Credit Alliance.

## OPINION

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

The Debtors, Harold E. Rubin ("Rubin") and Marvin J. Nadler ("Nadler"), seek to exclude from their bankruptcy estates their benefits under the pension plan of Halmar Distributors, Inc. ("Halmar"). Alternatively, if the benefits are included in the estates in the first instance, the Debtors contend that they are entirely exempt as "reasonably necessary ... for support" within the meaning of § 522(d)(10)(E) of the Bankruptcy Code, 11 U.S.C. § 522(d)(10)(E) (1982). The Debtors' largest creditor, ORIX Credit Alliance, Inc., moves for inclusion of the benefits in the Debtors' bankruptcy estates and opposes the exemption claims. The matter has been bifurcated in order to have the question of estate inclusion determined first. It is an important and unsettled question in this circuit.

## I. FACTS

The Debtors, now in their early sixties, founded Halmar many years ago. Each owns fifty percent of Halmar's capital stock, and each serves on its board of directors. Until recently, both worked for Halmar on a full-time basis, Rubin as its president and Nadler as its treasurer. Halmar sold a wide variety of household and personal products to department stores, drugstore chains, and other retail outlets located throughout the Northeast. Burdened by the consequences of a disastrous expansion into hardware items, Halmar sought chapter 11 protection with this court. Shortly thereafter, on February 14, 1990, the Debtors filed their own chapter 11 petitions as the result of personal guarantees of certain of Halmar's indebtedness. Halmar was unsuccessful in its attempt to reorganize; it has ceased operations and its assets have been largely liquidated by its principal lender.

In their schedules and statements of affairs filed with the court, the Debtors disclosed that they are entitled to retirement benefits under Halmar's pension plan, and that the value of the benefits held by each of them is approximately $540,000. The benefits are listed for informational purposes only, subject to the Debtors' contention that they are not part of their bankruptcy estates. Alternatively, if the benefits are ruled to be included in the bankruptcy estates, the Debtors have elected to claim the exemptions allowed them under federal rather than state law so as to be entitled to the exemption permitted for pension benefits by 11 U.S.C. § 522(d)(10)(E) (1982). (A Massachusetts statute granting exemptions for certain retirement plans has been enacted since the Debtors' bankruptcy filings. *See* 1990 Mass. Acts, ch. 77.

Halmar's pension plan was created on January 1, 1977 by a document entitled "Pension Plan and Trust Agreement of Halmar Distributors, Inc.," which was completely amended on December 12, 1984. Halmar is a signatory as employer and the Debtors are signatories as trustees. The plan has been determined to be qualified for the tax benefits allowed such plans under the Internal Revenue Code. Several hundred employees of Halmar are participants thereunder. It is a fixed benefit pension plan designed to provide a participant having sufficient years of service with monthly payments at age sixty-five equal to thirty percent of the participant's average monthly compensation. Whether its present funding is enough to provide that level of benefits has not yet been addressed at trial. Participants have the option to select various methods of receiving their retirement benefits, including monthly payments and a lump sum. The plan permits contributions by participants as well as by Halmar, but neither Nadler nor Rubin has made any contributions.

Significant to the present question of estate inclusion, the Employee Retirement Income Security Act of 1974 ("ERISA") requires pension plans "to provide that benefits provided under the plan may not be assigned or alienated," with exceptions for (i) voluntary and revocable assignments not in excess of ten percent of any benefit payment, (ii) certain assignments to secure a loan, and (iii) involuntary assignments of rights pursuant to specified court orders for alimony, child support or property settlement. Employee Retirement Income Security Act of 1974, § 206(d)(1), 29 U.S.C. § 1056(d)(1) (1990). Qualification of the pension plan for tax benefits under the Internal Revenue Code is dependent in part upon compliance with the requirement that "benefits provided under the plan may not be assigned or alienated," subject to the same three exceptions permitted by ERISA. 26 U.S.C. § 401(a)(13) (1983).

As required by these statutes, § 11.3 of Halmar's pension plan provides as follows:

11.3 NONALIENATION OF BENEFITS: Benefits payable under this Plan shall not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, charge, garnishment, execution, or levy of any kind, either voluntary or involuntary, prior to actually being received by the person entitled to the benefit under the terms of the Plan; and any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber, charge or otherwise dispose of any right to benefits payable hereunder, shall be void. The Trust fund shall not in any manner be liable for, or subject to, the debts, contracts, liabilities, engagements or torts of any person entitled to benefits hereunder.

Section 11.7 of the plan allows the involuntary assignments permitted by ERISA pertaining to domestic relations orders. The plan contains no other provision relating to assignment of benefits and no provision permitting borrowing by participants.

## II. INCLUSION OF PENSION BENEFITS IN BANKRUPTCY ESTATES

### A. *The Statutory Framework*

Section 541 of the Bankruptcy Code, 11 U.S.C. § 541 (1982), provides in pertinent part:

(a) The commencement of a case ... creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsection ... (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

.    .    .    .    .

(6) Proceeds, product, offspring, rents, and or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

.    .    .    .    .

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor ...

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

Section 522 provides in part:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate [subject to the debtor's election to claim exemptions allowed by state law or federal nonbankruptcy law, and subject to state "opt-out" legislation] ... property that is specified under subsection (d) of this section ...

(d) ...

(10) The debtor's right to receive—

⋅ ⋅ ⋅ ⋅ ⋅

(E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; and

(iii) such plan or contract does not qualify under section 401(a) ... of the Internal Revenue Code of 1954 ...

B. *Principal Cases*

■ The Debtors pose a simple argument. They say that their pension benefits are excluded from the bankruptcy estates because Halmar's pension plan and trust contains, in the words of § 541(c)(2), "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law." They point out that ERISA's mandate for a pension provision generally prohibiting assignment of a participant's benefits has been construed through regulations of the Secretary of the Treasury to prohibit garnishment of benefits by creditors of a participant. *E.g., Tenneco, Inc. v. First Virginia Bank of Tydewater*, 698 F.2d 688 (4th Cir.1983); *General Motors Corp. v. Buha*, 623 F.2d 455 (6th Cir.1980). *See also Guidry v. Sheet Metal Workers Nat. Pension Fund*, —— U.S. ——, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990) (ERISA prohibits constructive trust with *dicta* disapproving garnishment). They argue that the "applicable nonbankruptcy law" consists of either ERISA under principles of preemption or Massachusetts common law upholding so-called "spendthrift trust" restrictions upon voluntary or involuntary assignment of beneficial interests. This argument finds support in most of the decisions dealing with the question. *See, e.g., In re Moore*, 907 F.2d 1476 (4th Cir.1990), (excludible by reason of prohibition in ERISA against creditor process); *In re Threewitt*, 24 B.R. 927 (D.Kan.1982) (same); *Warren v. G.M. Scott & Sons (In re Phillips)*, 34 B.R. 543 (Bankr.S.D.Ohio 1983) (same); *In re Daniel*, 771 F.2d 1352 (9th Cir.1985) (excludible by reason of state spendthrift law); *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1988) (same); *In re Goff*, 706 F.2d 574 (5th Cir.1983) (same); *Howison v. W.W. Grainger, Inc., (In re Peterson)*, 88 B.R. 5 (Bankr.D.Me.1988) (75% excludible under state spendthrift law, 25% includible because of loan and withdrawal rights).

Other decisions, however, emphasize the presence of § 522(d)(10)(E) and read § 541(c)(2) to apply only to trusts unrelated to an employee benefit plan. *See, e.g., In re Graham*, 726 F.2d 1268, 1272 (8th Cir. 1984); *Regan v. Ross*, 691 F.2d 81, 86 (2d Cir.1982). *Compare In re Swanson*, 873 F.2d 1121, (8th Cir.1989) (8th Circuit obfuscates by including retirement funds in estate because of both state spendthrift law *and* the presence of § 522(d)(10)(E)). I conclude that *Regan v. Ross* and *In re Graham* correctly interpret § 541(c)(2). The other decisions launch into an inquiry of whether the phrase "applicable nonbankruptcy law" appearing in § 541(c)(2) means ERISA or state spendthrift law without

first giving sufficient consideration to whether the subsection applies at all to trusts containing retirement benefits.

C. *Principles of Statutory Construction Favoring Harmony Among Provisions and Giving Priority to the Specific Over the General*

A statute should be construed, if possible, in a manner which brings all of its provisions into harmony. *E.g., Guidry v. Sheet Metal Workers Nat. Pension Fund,* —— U.S. ——, 110 S.Ct. 680, 687, 107 L.Ed.2d 782 (1990); *Louisiana Pub. Service Com. v. FCC,* 476 U.S. 355, 370, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369 (1986). When there is potential for conflict, specific provisions should prevail over the more general. *Jett v. Dallas Independent School Dist.,* 491 U.S. 701, 109 S.Ct. 2702, 2722, 2724, 105 L.Ed.2d 598 (1989). Section 522 is clear and specific in permitting a debtor to exempt "from property of the estate" a "pension ... plan." Congress was well aware of the restriction against assignments required by ERISA and § 401(a) of the Internal Revenue Code; there is specific reference to § 401(a) in § 522(d)(10)(E). Because of the requirement of ERISA and the Internal Revenue Code, most retirement plans contain restrictions upon assignment of benefits. As later discussed, these restrictions would be valid under state spendthrift law except in relatively few cases such as plans created by the self-employed. Surely Congress would not have granted an exemption which would have no application to the bulk of the populace as the result of an exclusion from the estate under § 541(c)(2).

The decisions relied upon by the Debtors attempt to escape from this inconsistency with the rationalization that some "overlap" in a complex statute is understandable. *See e.g., In re Goff,* 706 F.2d at 579; *In re Threewitt,* 24 B.R. at 929–30. This is quite an overlap. And it is more than an overlap, because benefits in excess of support needs would thereby be unavailable to creditors, a result contrary to the clear intent of the exemption granted by § 522(d)(10)(E). Technically, moreover, there is an inconsistency rather than an overlap under the Debtors' interpretation of § 541(c)(2). Despite the right to exempt retirement benefits "from property of the estate" under § 522, that could not be done because the benefits would not be "property of the estate" under § 541.

Interpreting § 541(c)(2) as not referring to employee benefit trusts avoids these inconsistencies. It does not read § 541(c)(2) out of the Bankruptcy Code, as suggested by *McLean v. Cent. States S & S Area Pens. Fund,* 762 F.2d 1204, 1208 (4th Cir. 1985). To the contrary, it leaves § 541(c)(2) to apply to the type of trust which has traditionally contained restrictions on assignments—a donative trust not involving employee benefits. It is this type of trust which over the years has spawned the law governing restrictions on transfer of trust interests. It is this type of trust which has become known as a "spendthrift" trust. *See, e.g., Restatement (Second) of Trusts,* § 152. Many decisions have properly applied § 541(c)(2) in this context. *E.g., Matter of Moody,* 837 F.2d 719 (5th Cir.1988); *In re Arney,* 35 B.R. 668 (Bankr.N.D.Ill. 1983); *In re Kelleher,* 12 B.R. 896 (Bankr. M.D.Fla.1981). *Cf. Herrin v. Jordan (In re Jordan),* 914 F.2d 197 (9th Cir.1990) (trust created in structured settlement of accident claim considered created by claimant with own property so that restriction on transfer ineffective for purpose of § 541(c)(2)).

D. *Origins of Sections 541 and 522*

The words of § 541(c)(2), moreover, are like opaque capsules into which light may enter only through reflections from a beam shone on what surrounds them. That beam produces an understanding of the rich content of all of § 541 and reveals the limited function of subsection (c)(2), showing once again that there is more to statutory interpretation than keeping a dictionary handy. "Of course, the 'starting point in every case involving construction of a statute is the language itself.' ... But the text is only the starting point ... 'In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.' "

*Kelly v. Robinson*, 479 U.S. 36, 43, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986). This is particularly true of the Bankruptcy Code, whose background includes proceedings in Congress which took most of a decade and a prior bankruptcy law having three-quarters of a century of interpretive decisions. An examination of this wealth of material demonstrates that § 541(c)(2) has no application to retirement trusts.

The Bankruptcy Act of 1898 took an entirely different approach from that of the present Code to the types of property interests includible in the bankruptcy estate. In order to become part of the estate, property had to be of a kind which the debtor "could by any means have transferred or which might have been levied upon and sold under judicial process against him." Bankruptcy Act of 1898, § 70, 11 U.S.C. § 110 (repealed 1978). In interpreting the term "property" as it appeared in § 70, the courts added a further requirement—that the property interest not consist of future wages or their equivalent needed by the debtor for a fresh start. *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) (debtor's security assignment of his future wages deemed void as opposed to the bankruptcy policy favoring a fresh start); *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970) (debtor's right to accrued vacation pay excluded from bankruptcy estate because future paid vacation considered necessary for debtor's fresh start). *See also Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974) (debtor's right to income tax refund arising from excess withholdings part of estate because not equivalent to future wages necessary for basic requirements of life); *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) (debtor's right to income tax refund by reason of carry back of loss from year of bankruptcy to income of prior years deemed sufficiently rooted in the past to be part of bankruptcy estate). Retirement benefits were considered to be equivalent to future wages necessary for a fresh start, so that they were excluded from the bankruptcy estate without regard to whether they might be necessary for the debtor's support. *Turpin v. Wente (In re Turpin)*, 644 F.2d 472 (5th Cir.1981). All of these decisions were rendered in the context of a statute which left exemptions to state law and federal nonbankruptcy law. Bankruptcy Act of 1898, § 6, 11 U.S.C. § 24 (repealed 1978).

The relationship of exempt property to the bankruptcy estate was also quite different under the old Bankruptcy Act. Rather than the debtor having the right to claim exemptions "from property of the estate" as under present § 522, property which he rightly claimed as exempt never entered the estate in the first place. Bankruptcy Act of 1898, § 70, 11 U.S.C. § 110 (repealed 1978); *Lockwood v. Exchange Bank*, 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1903).

The reports of the Committees on the Judiciary for the House and Senate bills leading to the present Bankruptcy Code both state:

> Paragraph (1) [of § 541] has the effect of overruling *Lockwood v. Exchange Bank*, 190 U.S. 294 (1903) because it includes as property of the estate all property of the debtor, even that needed for a fresh start. After the property comes into the estate, then the debtor is permitted to exempt it under proposed 11 U.S.C. § 522 ... House Report No. 95–595, 95th Cong., 1st Sess. 367–8 (1977). Senate Report No. 95–989, 95th Cong., 2d Sess. 82–3 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868, 6324.

Here is clear proof, if any is needed beyond the wording of §§ 541 and 522, that Congress intended to include within the bankruptcy estate all property for which a right of exemption is granted. All that is excluded now under the fresh start policy is "earnings from services performed by an individual debtor after commencement of the case," pursuant to § 541(a)(6). Equally pertinent to the present question, the committee reports also state that § 541 "has the effect of overruling *Lines v. Frederick*," showing that all future wage equivalents, including pension benefits, are now to come into the bankruptcy estate in the first instance. House Report No. 95–595, 95th Cong., 1st Sess. 367–68 (1977); Senate

Report No. 95–989, 95th Cong., 2d Sess. 82–83 (1978).

In addition to including exempt property and future wage equivalents in the estate, § 541 also drops the requirement that a property interest be subject to voluntary or involuntary transfer in order to be part of the estate. The omission is emphasized by § 541(c)(1) which provides that "[e]xcept as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate . . . notwithstanding any provision . . . that restricts or conditions transfer of such interest by the debtor." This elimination of the general test of transferability also has a lucid history. Its origin is a similar provision contained in the bill filed by the Commission on the Bankruptcy Law of the United States, which was created by Congress in 1970. *See* Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. 93–137, 93d Cong., 1st Sess., Part II, § 4–601(b) (1973). The Commission believed that "a reference to nonbankruptcy law to determine the property to be administered for the benefit of creditors was a mistake" because state law governing involuntary assignment of property through attachment or execution was "so haphazard that it should not be embodied in what is supposed to be a uniform bankruptcy law." Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93d Cong., 1st Sess., Part II, § 4–601(b) (1973).

This leads us to § 541(c)(2) which validates a "restriction on the transfer of a beneficial interest in a trust that is enforceable under applicable nonbankruptcy law." There is ample evidence, beginning with the Commission's report, that § 541(c)(2) was intended to apply only to property outside the scope of the exemption provisions. Section 4–601 of the Commission's bill included in the bankruptcy estate trusts containing restrictions on transfers "only to the extent of the income reasonably necessary for the support of the debtor and his dependents." Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93d Cong., 1st Sess., Part II. § 4–601(b) (1973). The

Commission's notes to § 4–601 state that "[t]his equates the treatment of beneficial interests which the debtor did not create and could not transfer, voluntarily or involuntarily, with related exemptions, *e.g.*, pensions." The Commission's bill contained the first proposal to specify exemptions within the bankruptcy law itself; its section on exemptions is quite similar to present § 522. Most important, that section, § 4–503, gave exemption rights for pension plans "to the extent . . . the debtor's interest therein is reasonably necessary for the support of the debtor and his dependents." The Commission's notes to § 4–503 state that "[t]his treatment is similar to that accorded interests in spendthrift trusts by § 4–601(b)." Obviously, therefore, the two sections were intended to deal with different property interests.

The Commission's report also contains clear language demonstrating an intent that retirement benefits be included in the estate in order that the estate may retain benefits in excess of the debtor's support needs under his exemption rights:

Benefits or rights under a retirement plan are exempt under clause (6) if the plan is qualified under I.R.C. § 401(a) [a condition rejected by Congress]. A limit is placed on the exemption since it is recognized that members of professional corporations and officers will have very substantial benefits. The exemption is limited to benefits "reasonably necessary for the support of the debtor and his exemptions" . . . Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93d Cong., 1st Sess., Part II, 129.

Both the House and Senate bills adopted the Commission's general view favoring broad inclusion of property interests. The Senate bill also adopted the Commission's proposal to exclude from the bankruptcy estate trusts with transfer restrictions only to the extent needed for the support of the debtor and his dependents. S.2266, 95th Cong., 2d Sess., § 541(c)(2) (1978). The House version, which eventually prevailed, eliminated these trust interests from the bankruptcy estate altogether. H.R. No.

8200, 95th Cong., 1st Sess., § 541(c)(2) (1977). Significantly, in neither branch does the legislative history indicate an intention that § 541(c)(2) apply to property for which exemption rights are granted under § 522. The discussions of § 541(c)(2) in the committee reports for both the House and Senate constantly refer only to "spendthrift trusts", without a whisper of a reference to retirement benefits. *See,* House Report No. 95–595, 95th Cong., 1st Sess. 176, 369 (1977); Senate Report No. 95–989, 95th Cong., 2nd Sess. 83 (1978). Although the phrase "spendthrift trusts" could conceivably include any trust containing a restriction on assignment, the phrase traditionally has reference to donative trusts outside the employment area, over which a vast body of case law has developed. *See, e.g., Restatement (Second) of Trusts § 152 and illustrations.* The Commission's report contains specific reference to such law. Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93d Cong., 1st Sess., Part II, 150.

### E. *Purpose of § 541(c)(2)*

The purpose of § 541(c)(2) has nothing to do with retirement trusts. The subsection was designed to avoid having the "bankruptcy of the beneficiary ... defeat the legitimate expectations of the settlor of the trust." House Report No. 95–595, 95th Cong., 1st Sess. 176 (1978), U.S.Code Cong. & Admin.News 1978 P. 6136. An employer has no expectations from these provisions which are deserving of such Congressional deference. The employer inserts a restriction on transfer into the plan because of the command of ERISA and because of the tax advantage gained from having the trust qualify for benefits under the Internal Revenue Code. If any party has expectations from such pension provisions, it is Congress which mandated them.

### F. *Other Defects in Contrary Interpretations*

Application of state spendthrift law to the issue of inclusion of pension benefits in the estate, the approach currently adopted by many of the courts, has faults beyond its deficiencies in textual exegesis. Because an individual cannot create a trust for his own benefit free from the claims of his creditors, principles of spendthrift law require inclusion of retirement benefits of the self-employed in their bankruptcy estates, but not inclusion of benefits created by an employer for his employees, no mater how much the benefits might total. *E.g., In re Goff,* 706 F.2d 574 (5th Cir. 1983). The sole stockholder of a corporation is placed in the same category as the self-employed for this purpose. *E.g., In re Lichstrahl,* 750 F.2d 1488 (11th Cir.1985). This is unwarranted discrimination against the self-employed and owners of small corporations, as has been observed. *See,* Note, *There Should be Parity in Bankruptcy Between Keogh Plans and other ERISA Plans,* 80 N.W.L.Rev. 165, 185 (1986). Principles of spendthrift trust law can produce other novel results in the retirement benefit area. For example, the ability of an employee of a large corporation to quit his job and thereby acquire the present right to his retirement benefits has been considered sufficient control over the trust to justify invalidating the restriction on transfer. *In re Schmitt,* 113 B.R. 1007 (Bankr.W.D.Mo.1990). These courts are actually developing a new body of law under the standard of "applicable nonbankruptcy law." Congress gave no hint that it intended this phrase to apply to anything other than the settled law of donative trusts.

## III. *CONCLUSION*

[4] Exclusion of these pension benefits from the Debtors' bankruptcy estates by reason of § 541(c)(2) would do violence to the relationship between §§ 541 and 522. Exclusion would also ignore the rest of § 541 and trivialize its rich history. Whether subject to voluntary transfer, garnishment or the Debtors' exemption rights, and even though in the nature of wages for past services, all beneficial interests come into the bankruptcy estate, except for interests under valid donative spendthrift trusts in order that the settlor's expectations under these trusts may be protected. A contrary interpretation of § 541(c)(2) would be inconsistent with sound statutory herme-

neutics. *See e.g.,* Eskridge and Frickley, *Statutory Interpretations as Practical Reasoning,* 42 Stan.L.Rev. 321 (1990); Sunstein, *Interpreting Statutes in· the Regulatory State,* 103 Harv.L.Rev. 405 (1989).

A separate order has issued declaring the pension benefits a part of the Debtors' bankruptcy estates and scheduling a pretrial in the proceeding under § 522(d)(10)(E) to adjudicate the question of the reasonable necessity of the benefits for the support of the Debtors and their dependents.