## In re FARLEY, INC., Debtor.

### Bankruptcy No. 91 B 15610.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 17, 1997.

not be a benefit.

---

**8.** The Court cannot envision a scenario where the discharge of a debt owed by a debtor would

Mark K. Thomas and Amy A. Hijjawi, Katten Muchin & Zavis, Chicago, IL, for Debtor.

Benjamin J. Randall and Rusty A. Payton, Katz Randall & Weinberg, Chicago, IL, for Ohio Bureau of Workers' Compensation.

David K. Henriksen, Farley Industries, Inc., Chicago, IL.

### MEMORANDUM OPINION ON DEBTOR'S MOTION FOR SUMMARY JUDGMENT ON OHIO BUREAU WORKERS' COMPENSATION SECOND AMENDED CLAIM NO. 509

JACK B. SCHMETTERER, Bankruptcy Judge.

This proceeding was started on July 24, 1991, by filing of an involuntary petition against Farley, Inc. ("Farley" or "Debtor") under Chapter 7 of the Bankruptcy Code. Farley consented to entry of an order for relief, and exercised its right under 11 U.S.C. § 706(a) to convert the proceeding to one under Chapter 11 of the Bankruptcy Code. 11 U.S.C. § 1101, *et seq.*

Its Plan has since been confirmed, pursuant to which jurisdiction was retained to resolve all disputes over claims dealt with under the Plan.

On December 9, 1991, the Ohio Bureau of Workers' Compensation ("Ohio" or the "State") filed its proof of claim, later amended on September 18, 1995, and September 26, 1995 ("Claim 509"), seeking reimbursement pursuant to Farley's asserted statutory obligation under Ohio law for workers' compensation payments. Farley filed an answer and objection to this claim both denying liability to the State for reimbursement and objecting that the original Claim 509 was not timely filed. On August 22, 1996, the State moved for extension of time to file its proof of claim, and this motion was allowed on October 3, 1996, for reasons stated from the bench. Pursuant to that ruling, Farley's objection as to untimeliness of the original filing has been overruled. Merits of the claim and Motion for Summary Judgment thereon remain to be decided.

Farley moved for summary judgment on its objection to Claim 509 as amended and supported that motion with a memorandum and also a statement of undisputed facts under Local Bankruptcy Rule 402.M. The State filed a memorandum of law, its reply to Farley's 402.M Statement, and a statement of additional facts asserted to be undisputed under Rule 402.N(3). Farley filed a response to Ohio's additional facts as well as a reply memorandum.

Pursuant to Local Bankruptcy Rules 402.M and 402.N and from the filings of the parties, certain facts found to be undisputed are set forth below. Based thereon and for reasons stated herein, by separate judgment Debtor's motion for summary judgment will be allowed and judgment entered disallowing Claim 509.

### Summary Judgment Procedure

The bar has had many years of experience with our Local Bankruptcy Rule 402.M and N governing summary judgment procedure (which is almost an exact copy of the even older District Court Rule for such procedure). Several opinions in the District over the years have cautioned counsel about the importance of precisely following the those Rules. However, as illustrated here, it was necessary to parse through the asserted facts to see which were supported by required procedures and papers, and those that were not, in order to separate facts that may properly be deemed undisputed for purposes of this motion from those asserted facts which may not be deemed undisputed.

■ Local Rule 402.M of the Bankruptcy Rules adopted for this District requires the party moving for summary judgment to file, among other things, a detailed statement ("402.M statement") of material facts as to which the movant contends there is no genuine issue. Local Bankr.R. 402.M.[1] Farley filed a 402.M statement that substantially complies with requirements of this Rule. It contains numbered paragraphs which set out assertedly uncontested facts, and most of the paragraphs refer to supporting pleadings and other materials. However, in several instances, Farley includes legal conclusions in its 402.M statement. Fed.R.Civ.P. 56 (Fed. R. Bankr.P. 7056) and Local Rule 402 contemplate statements of material fact. Statements that embody conclusions will not be treated as undisputed facts. *See Maksym v. Loesch,* 937 F.2d 1237, 1243 (7th Cir.1991); *Davis v. City of Chicago,* 841 F.2d 186, 189 (7th Cir.1988).

■ The party opposing a summary judgment motion is required by Local Rule 402.N to file a response ("402.N statement") to the

---

1. "With each motion for summary judgment filed pursuant to Fed.R.Civ.P. 56 (Fed. R. Bankr.P. 7056), the moving party shall serve and file—(1) any affidavits and other materials referred to in Fed.R.Civ.P. 56(e); (2) a supporting memorandum of law; and (3) a statement of material facts as to which the moving party contends there is no genuine issue and that entitles the moving party to judgment as a matter of law that includes: (a) a description of the parties; and (b) all facts supporting venue and jurisdiction in this Court. The statement of facts referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion." Local Bankr.R. 402.M.

movant's 402.M statement, paragraph by paragraph, and to set forth any material facts which would require denial of summary judgment, specifically referring to the record for support of each denial of fact. Local Bankr.R. 402.N.[2] State's 402.N statement complies with the procedural rule. The State also filed a statement of additional facts pursuant to Rule 402.N(3)(b). However, in several instances that statement failed to include specific references to "affidavits, parts of the record, and other supporting materials relied upon." Local Bankr.R. 402.N. Farley disputed many of these paragraphs. Compliance with the Local Rules is not a mere technicality. The Court relies greatly upon the information presented in these statements in separating the facts about which there is a genuine dispute from those about which there is none. *American Ins. Co. v. Meyer Steel Drum, Inc.*, 1990 WL 92882 at *7 (N.D.Ill. June 27, 1990). This Court "should not be required to guess whether the facts asserted by the opposing part[y] are in direct conflict or scour the record in search of a party's evidence." *Fotsch v. Eli Lilly and Co.*, 1995 WL 238677 at *1, n. 1 (N.D.Ill. Apr.20, 1995). Therefore, unsupported assertions in the State's statement of additional facts, to the extent disputed by Farley, are not deemed to be undisputed facts.

### Facts as to Which There is no Material Dispute

Pursuant to the foregoing, the following facts are found not to be in dispute:

1. On July 24, 1991 ("Petition Date"), an involuntary bankruptcy petition was commenced against Farley. On September 24, 1991, Farley consented to an order for relief and converted its case to a proceeding under Chapter 11. 402.M ¶ 1.

2. On September 24, 1991, an order was entered herein directing, *inter alia*, that all claims must be filed on or before November 15, 1991 (the "Bar Date"), and declaring that all creditors who failed to file claims on or before the Bar Date would not receive a distribution from Farley's estate. 402.M ¶ 2.

3. On October 15, 1991, Farley sent notice of the Bar Date to the State. 402.M ¶ 3.

4. The State filed its formal proof of claim no. 509 on December 9, 1991. 402.M ¶ 4; 402.N ¶ 4. (By order entered October 3, 1996, and for reasons stated at the time, the State was granted an extension of time to file its claim. That order effectively made its filing timely.)

5. On August 31, 1992, Debtor filed an omnibus objection to claims on the grounds that such claims exceeded the amount set forth in Farley's records as due and owing. Farley reserved the right to file supplemental papers in support of its objections prior to any scheduled hearing thereon. Included in the omnibus objection was an objection to Claim 509. Farley Reply Memorandum, Ex D, attachment at 22.

6. On September 18, 1995, the State filed its amended Claim 509. 402.M ¶ 6.

7. On September 26, 1995, the State filed its second amended Claim 509 against which the pending motion for summary judgment lies. 402.M ¶ 7.

8. Prior to the Petition Date, Farley operated and had persons employed in the State of Ohio at its Doehler–Jarvis Division. In July 1990, Farley sold its Doehler–Jarvis Division and thereafter did not employ workers in that State. 402.M ¶ 8.

9. Claim 509 seeks reimbursement from Farley for workers' compensation claims of former Farley employees whose claims

---

2. "Each party opposing a motion under Fed.R.Civ.P. 56 (Fed. R. Bankr.P. 7056) shall serve and file the following: (1) any opposing affidavits and other materials referred to in Fed.R.Civ.P. 56(e); (2) a supporting memorandum of law; and (3) a concise response to the movant's statement of facts that shall contain: (a) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon; and (b) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Bankr.R. 402.N.

arose as a result of injuries that occurred to them on or prior to July 25, 1990 (prior, that is, to when Farley sold its Ohio Division). 402.M ¶ 9.

10. In Claim 509, the State seeks reimbursement for (a) payments the State alleges it actually made to former Farley employees on account of workers' compensations claims already liquidated; (b) payments that the State anticipates it may make in the future to former Farley employees on account of liquidated workers' compensation claims yet to be liquidated; and (c) payments the State anticipates that it may make in the future to former Farley employees on account of anticipated workers' compensation claims that have not as yet been asserted or filed, let alone liquidated. 402.M ¶ 10.

11. Under the second amended Claim 509, the aggregate amount claimed is $9,335,-119.03. Approximately $3,500,000 represents amounts actually paid by the State to former Farley employees and about $5,800,000 of the Claim represents the State's estimation of amounts it may have to pay to former Farley employees in the future. 402.M ¶ 11. Since filing second amended Claim 509, the State has paid additional sums to former Farley employees. 402.N ¶ 11.

12. Former Farley employees have not filed claims against Farley's bankruptcy estate nor have they filed lawsuits against Farley. 402.M ¶ 12.

13. At all times mentioned here, State law required entities having more than one employee to participate in and comply with the State's workers' compensation program. The State's workers' compensation program has been statutorily codified as the Ohio Workers' Compensation Act (the "Act"). 402.M ¶ 13.

14. Pursuant to the Act, Farley applied for, and the State approved, Farley's status as a self-insuring employer. Farley was an approved self-insuring employer from October 1, 1982 through July 25, 1990, when it sold the Ohio Division. 402.M ¶ 14. Farley's last approved self-insuring employer renewal period covered the period from October 1, 1989 to October 1, 1990. 402.N ¶ 1. As a self-insuring employer, Farley posted the surety bond required pursuant to the Act.[3]

15. On or about September 4, 1990, Farley informed the State that it had sold the Doehler–Jarvis Division, its only Ohio operation, and requested that its self-insurance privileges be rescinded as of the sale date, July 25, 1990. 402.N ¶ 2.

16. Farley, through R.E. Harrington, its claims administrator, managed existing claims through May 1991. 402.N Response ¶ 5; 402.N ¶ 3.

17. On or about April 2, 1991, Farley, through R.E. Harrington, notified the State that, as of May 1, 1991, Farley would no longer have funds to continue paying compensation claims. 402.N ¶ 5; 402.N Ex. 2. Farley also requested that the State assume responsibility for administration of the workers' compensation claims of Farley's former employees. 402.N ¶ 6; 402.N Ex. 2.

18. On May 15, 1991, the Self–Insured Review Panel of the Ohio Bureau of Workers' Compensation formally revoked Farley's self-insurance privilege. 402.N ¶ 7; 402.N Ex. 3.

19. On February 24, 1994, the State sent a letter to the Office of the Attorney General certifying a claim against Farley, Inc. in the amount of $12 million, which represented the estimated computation of future value workers' compensation claims. 402.N ¶ 9; 402.N Ex. 4. This letter did not state whether the claim was certified for the commencement of a civil action, nor did it mention Ohio Rev.Code Ann. § 4123.75. 402.N Response ¶ 9.

---

**3.** Although existence of the bond was not formally offered as a statement of undisputed material fact, the moving papers show agreement that the requisite surety bond was posted. The State offered as an undisputed exhibit a letter from R.E. Harrington to the Bureau of Worker's Compensation which stated "[p]lease note that surety has been on file since the employer was first granted self-insurance privileges." 402.N, Ex. 2. Moreover, both parties made statements in their memoranda which allude to the existence of Farley's surety bond. *See* 402.N ¶ 15; 402.N Response ¶ 15.

### Disputed Facts

There are no material disputed or contested fact issues preventing ruling on Plaintiffs' motion for summary judgment.

### JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court pursuant to 28 U.S.C. § 157 and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. Venue lies properly under 28 U.S.C. § 1409. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(B) (allowance and disallowance of claims).

### SUMMARY JUDGMENT STANDARDS

Summary judgment motions are governed by Fed.R.Civ.P. 56 made applicable to bankruptcy proceedings by Fed. R. Bankr.P. 7056. Summary judgment is granted to avoid unnecessary trials when there are no genuine issues of material fact in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The moving party in a motion for summary judgment has the initial burden of demonstrating that there are no genuine issues of material fact and that judgment in its favor should be granted as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). "The party opposing the motion may not rest upon mere allegations or denials in its pleadings. Rather, its response must set forth in required filings specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553; *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. The court should draw all inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355–56. Still, a dispute of a material fact will prevent summary judgment only if the disputed fact is outcome determinative under applicable law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

### THE OHIO WORKERS' COMPENSATION ACT

At all times mentioned until Farley left Ohio, the Ohio Workers' Compensation Act ("Act") contained the following provisions:

Section 4123.35 of the Act provided, in pertinent part:

(B) ... that such employers and publicly owned utilities who will abide by the rules of the commission and who may be of sufficient financial ability to render certain the payment of compensation to injured employees or the dependents of killed employees ... and who do not desire to insure the payment thereof or indemnify themselves against loss sustained by the direct payment thereof, may, upon a finding of such facts by the commission, be granted the privilege to pay individually such compensation ... directly to such injured employees or the dependents of such killed employees.

.     .     .     .     .

(C) The commission shall require a surety bond from employers and publicly owned utilities who are granted the privilege to pay compensation directly, issued pursuant to section 4123.351 [4123.35.1] of the Revised Code, that is sufficient to compel, or secure to injured employees, or to the dependents of employees as may be killed, the payment of such compensation and expenses....

Section 4123.351 of the Act provided, in pertinent part:

(A) *Every employer* and publicly owned utility who is granted the privilege of paying compensation directly *shall obtain from the industrial commission a surety bond* issued pursuant to this section. *The bond shall provide for payment from the self-insuring employers' surety bond fund to the commission of any amounts paid by the commission in compensation or benefits to employees of the employer in order to cover any default in payment by the employer. The bond issued to each employer shall be for a face amount sufficient to cover*

the estimated potential liability of that employer. *(Emphasis added.)*

(B) *The commission shall operate a surety bond program for self-insuring employers.* The program shall make available to employers and publicly owned utilities who are granted the privilege of paying compensation directly surety bonds at rates which are competitive with rates offered by companies mentioned in section 3929.10 of the Revised Code ... The commission's program shall in all practical respects function as a surety bond company.... (Emphasis added.)

(C) *If a self-insuring employer defaults, the commission shall recover payments of compensation or benefits from the self-insuring employer's surety bond.* Payment from the bond relieves the employer of any liability for damages at common law or by statute that arises out of the injury or occupational disease that forms the basis of the workers' compensation claim to the extent of the payment. (Emphasis added.)

(D)(1) *There is hereby established a self-insuring employers' surety bond fund,* which shall be in the custody of the treasurer of state and *which shall be separate from the other funds established and administered pursuant to this chapter.* The fund shall consist of contributions and other payments thereto by self-insuring employers who purchase a bond to secure the payment of compensation and benefits required by section 4123.35 of the Revised Code. *Disbursements from the fund shall be made by the industrial commission pursuant to this section.* (Emphasis added.)

*See* Ohio Response, ¶¶ 16, 18.

The Act was amended in 1993. The 1993 amendments to § 4123.351 of the Act renamed the Surety Fund the "Self Insuring Employers' Guaranty Fund," and the 1993 amendments added § 4123.351(G) to the Act, which provided as follows:

(G) The administrator, on behalf of the self-insuring employers' guaranty fund, has the rights of reimbursement and subrogation and shall collect from a defaulting self-insuring employer or other liable person all amounts he has paid or reasonably expects to pay from the fund on account of the defaulting self-insuring employer.

*See* Ohio Response, ¶ 20.

The Claim originally filed by the State was "premised" upon § 4123.351(G), which section did not come into existence until 1993, and sought reimbursement from payments made to former Farley employees from the Surety Fund.[4] The State was seeking reimbursement for payments made from the Guaranty Fund, which fund was formerly known as the Surety Fund, and was then seeking payments from the "surplus" fund. However, the State's briefings on the pending motion now contend that the claim is based upon § 4123.75 of the Act, which provides in pertinent part that:

Any employee whose employer has failed to comply with Section 4123.35 ... may file his application with the industrial commission or the bureau of workers' compensation ... *Payment* of [such] claim shall be made promptly *from the statutory surplus fund ... The administrator shall institute proceedings to recovery* from the employer any *monies paid from the surplus fund* and to secure the employer's payment of the award.

(Emphasis added.)

The State has not demonstrated on this record that it made payments from the "surplus" fund; rather the State admits that it made payments to Farley's former Ohio employees from the Surety Fund (n/k/a the Guaranty Fund).

### *DISCUSSION*

Under the Ohio workers' compensation system, an employer may either pay workers' compensation premiums to the state fund or may self-insure under the Ohio Workers' Compensation Act ("Act"). *In re Suburban Motor Freight, Inc.,* 36 F.3d 484, 486 (6th Cir.1994) (*citing* Ohio Rev.Code Ann.

---

**4.** The 1993 amendments to the Act renamed the Surety Fund the "Self–Insuring Employers' Guaranty Fund" (the "Guaranty Fund"). *See* Ohio Response, ¶ 20.

§§ 4123.35(A), (B)). The Ohio workers' compensation system was amended in 1993, years after Debtor sold its Ohio Division. Prior to the 1993 amendments, the statute provided that an employer that opted for self-insurance was required to post a bond sufficient to secure payment of employee benefits. *Id.* (*citing* Ohio Rev.Code Ann. § 4123.35(C)). The purpose of the bond was to cover any default in payment by the employer. Ohio Rev.Code Ann. § 4123.351(A). In addition, the State acted as a surety bond company whereby it provided surety bonds to employers who did not or could not otherwise obtain them. Ohio Rev.Code Ann. § 4123.351(B); Ohio's opposition memorandum at 3.

In situations where an employer failed to comply with the workers' compensation statutes, the employee had the option of filing an application for compensation with the State. Ohio Rev.Code Ann. § 4123.75. Such compensation was and is paid out of the state surplus fund. *Id.; Suburban Motor Freight,* 36 F.3d at 486. If such payment is required of the State because of employer non-compliance with the Compensation Act, then " . . . [i]f a claimant secures payment from the surplus fund, the [Ohio] Bureau of Workers' Compensation turns to the noncompliant employer for reimbursement of the claims payments." *Id.* (*citing* Ohio Rev.Code Ann. § 4123.75). Ohio now claims that its right to reimbursement arises under § 4123.75 of the Ohio Revised Code.[5]

▄▄▄ Pursuant to Fed. R. Bankr.P. 3001(f), a validly filed proof of claim constitutes *prima facie* evidence of the claim's validity. The objector has the initial burden to produce some evidence to overcome this rebuttable presumption. *Matter of Missionary Baptist Foundation of America, Inc.,* 818 F.2d 1135, 1143 (5th Cir.1987); *In re Stoecker,* 143 B.R. 879, 883 (N.D.Ill.1992)*, aff'd in part, vacated in part,* 5 F.3d 1022 (7th Cir.), *reh'g denied* (1993). The burden then shifts back to the claimant to produce evidence meeting the objections and estab-

lishing the claim. *In re Chapman,* 132 B.R. 132, 143 (Bankr.N.D.Ill.1991). Although the burden shifts during the claims objection proceeding, the ultimate burden is always on the claimant to prove the entitlement. *In re Holm,* 931 F.2d 620, 623 (9th Cir.1991); *In re Chapman,* 132 B.R. at 143.

As stated, the State filed its proof of claim on December 9, 1991, which claim as presently amended argues entitlement under Ohio Rev.Code Ann. § 4123.75. Farley argues that this section is inapplicable and that, even if applicable, the State has not met its burden of proof with respect to required elements under § 4123.75 to sustain the claim.

Section 4123.75, which was unchanged in any way material here by the 1993 amendments, provides:

> *Any employee whose employer has failed to comply with section 4123.35 of the Revised Code,* who has been injured or has suffered an occupational disease in the course of his employment, which was not purposely self-inflicted, or his dependents in case death has ensued, may file his application with the industrial commission or the bureau of workers' compensation for compensation and the administrator of workers' compensation shall determine the application for compensation in like manner as in other claims and shall make an award to the claimant as he would be entitled to receive if the employer had complied with section 4123.35 of the Revised Code. *Payment of the claim shall be made promptly from the statutory surplus fund . . . The administrator shall institute proceedings to recover from the employer any moneys paid from the surplus fund* and to secure the employer's payment of the award. The employer shall pay the award in the manner and amount fixed thereby or shall furnish to the bureau a bond, in an amount and with sureties as the bureau requires, to pay the employee the award in the manner and amount fixed thereby.

---

5. Ohio originally cited to § 4123.351 as the basis for Claim 509. However, in its reply memorandum it states that it erroneously cited to § 4123.351(G) and expressly "withdraws those allegations." Ohio Reply at 4, n.3. Ohio now argues only that it is entitled to assert a claim pursuant to Ohio Rev.Code Ann. § 4123.75.

Ohio Rev.Code Ann. § 4123.75 (emphasis added). Thus, the first relevant question is whether Farley failed to comply with section 4123.35 of the Revised Code so as to trigger possible liability under § 4023.75. Section 4123.35, also substantially unchanged as a result of the 1993 amendments, provides that an employer who elects and has been granted the privilege of self-insurance must provide a surety bond sufficient to compel or secure compensation to injured employees. In addition, an employer who is no longer self-insuring or operating in Ohio, is required to continue to pay certain assessments for administrative costs and for the surplus fund. Ohio Rev.Code. Ann. 4123.35.

■ Farley has established that it was a self-insuring employer until late July 1990, when it sold its only Ohio operation and later requested that its self-insurance privileges be rescinded. No dispute of fact has been raised suggesting that Debtor failed to comply with § 4123.35. Farley was granted self-insurance status and posted a bond in compliance with the requirements thereof.[6] The State has not established that Farley failed to comply with § 4123.35. In fact, it did not allege that Farley was a non-complying employer as that term is used in § 4123.75.

Moreover, Ohio has not established that employee applications for compensation were made in compliance with § 4123.75,[7] nor has Ohio established whether payment of such claims was made from the statutory surplus fund.[8] The State, as the claimant, had the final burden as to the validity of its claim; it failed to meet its burden.

■ The State's claim is actually premised on rights granted to the State in 1993 by the new provision, § 4123.351(G), rights not at all the same as those provided in the older (and here applicable) § 4123.75. There is no basis in the statute to read the 1993 amendment as restating an old or existing right of recovery by the State as Ohio has argued. Under the older provision, the State has not demonstrated a recovery right against an employer who posted the requisite bond, and the State, prior to the 1993 annulment, was only given rights against the bond. Act, § 4123.351(G). That is the situation here.

Claims of the former Farley employees arose prior to July 25, 1990. *See* Ohio Response, ¶ 6. At all times prior to July 25, 1990, Farley was in compliance with the coverage requirements of § 4123.35 applicable to self-insuring employers. The State does not allege or cite any facts establishing that Farley failed to comply with § 4123.35 prior to July 25, 1990. In fact, the exhibits attached to Ohio's Response establish that Farley was in compliance as a self-insuring employer at least through April 30, 1991. *See* Ohio Response, Exs. 2 and 3. Exhibit 3 to the Ohio Response, an order dated May 15, 1991, provides that Farley "has not demonstrated the . . . ability *to continue* to exercise the privilege of self-insurance." Accordingly, Farley's self-insurance privileges were first revoked in May 1991 *after* all the underlying claims of former Farley employees arose. Similarly, Ohio Response Exhibit 2, a letter dated April 2, 1991, indicated that: "Please note that surety has been on file since the employer was first granted self-insurance privileges."

---

**6.** Ohio's bankruptcy claim number 508 sought recovery for premiums due pursuant to § 4123.35, which became due on September 24, 1991. Proof of Claim No. 508. This claim was allowed and paid pursuant to Order dated February 8, 1995.

**7.** Ohio includes in its statement of additional facts a paragraph stating that proceedings and payments were initiated and determined pursuant to § 4123.75. Ohio Additional Facts at ¶ 10. However, Ohio sets forth no factual basis in this record for that contention as required by Bankruptcy Rule 402 and Fed. R. Bankr.P. 7056, and Farley disputes it. It therefore cannot be deemed an undisputed fact.

**8.** Ohio also included in its statement of additional facts a paragraph stating that all of Farley's surety bonds have been exhausted and any recovered amounts have been credited against Ohio's claim. Ohio Additional Facts ¶ 15. However, as with Ohio's preceding allegation, the State did not show on the record the factual basis through documents and affidavits under Fed.R.Civ.P. 7056 for this allegation which Farley disputed. It therefore cannot be deemed an undisputed fact sufficient to defeat summary judgment. Moreover, since Farley was a complying employer that posted the required bond, the fact—if established—that the bond has since been exhausted would not transform Farley into a non-complying employer under § 4123.75.

Finally, Farley paid the State's claim number 508, a claim based on Farley's "workers' compensation self-insured assessments," which assessments arose prior to the revocation of Farley's self-insuring status. *See* Response of Ohio to Debtor's Amended Objection to Claim No. 508, ¶¶ 1, 8, Exhibit C hereto. These assessments constituted Farley's "contributions" to the Surety Fund referenced in § 4123.351(D)(1).

The State is not entitled to the remedy set forth in § 4123.75 when dealing with a self-insuring employer who complies by providing a surety bond, because § 4123.351(C) of the Act provided that: "If a self-insuring employer defaults, the Commission shall recover payments of compensation or benefits from the self-insuring employer's surety bond." The amount of that bond was to be sufficient to cover the full estimated liability of the employer, Act § 4123.351(A), and since Farley's bond was accepted by the State, the amount of it was accepted at the time as sufficient.

Prior to 1993, the State was not granted the right to pursue the self-insuring employers further than the surety bond, and the self-insuring employer's only obligation otherwise was its required payments to the Surety Fund. Contrary to the State's unsupported argument that § 4123.75 provides a historical right to pursue a self-insured employer, the Bureau of Workers' Compensation first amended its rules in 1993 after being granted the explicit reimbursement rights in § 4123.351(G) to provide:

> OAC 4123–19–3(G). Upon default of the self-insuring employer, it shall be the responsibility of the administrator of the Bureau of Workers' Compensation to represent the interests of the State Insurance Fund and the self-insuring guaranty fund. The administrator, on behalf of the self-insuring employer's guaranty fund, has the rights of reimbursement and the subrogation and shall collect from a defaulting self-insuring employer or other liable person all amounts the Bureau has paid or reasonably expects to pay from the guaranty fund on account of the defaulting self-insuring employer.

■ The State contends that the Legislature's 1993 explicit provision of a right of reimbursement and subrogation in § 4123.351(G) was intended to be a "mere recitation or restatement" of § 4123.75. When determining legislative intent under Ohio law, "the court's duty is to give effect to statutory language, not to delete words used or insert words not used." *Bernardini v. Conneaut Area City School District Board of Education,* (1979), 58 Ohio St.2d 1, 387 N.E.2d 1222. The State's position here would require the Court to insert § 4123.351(G) into the Act in 1990, three years before it passed the Legislature, or to change the words used in § 4123.75. Words were inserted into § 4123.351 in 1993 to give the State an explicit right of reimbursement on behalf of the Surety Fund. This provision was a new right granted to the State in the Act.

■ The plain meaning of the words used by the Ohio Legislature must be followed. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Moreover, specific statutory provisions control over general provisions. *See Matter of Nobleman,* 968 F.2d 483, 488 (5th Cir.1992), *aff'd,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) ("General language of a statute does not prevail over matters specifically dealt with in another part of the same enactment"); *In re Pacific Far East Line, Inc.,* 644 F.2d 1290, 1293 (9th Cir.1981). "When there is a potential for conflict, specific provisions should prevail over the more general." *In re Nadler,* 122 B.R. 162, 166 (Bankr.D.Mass.1990) (*citing Jett v. Dallas Independent School District,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)).

Here § 4123.351(A) and (C) plainly, clearly, and specifically provide rights and remedies in the event that the State makes payment on behalf of a self-insured employer who, *arguendo,* had defaulted in some way. If a self-insuring employer defaults, the State shall recover payments from the self-insuring employer's surety bond (§ 4123.351(C)); the surety bond shall provide for payment from the Surety Fund (§ 4123.351(A)); and the Surety Fund is separate from the other funds established and administered under the Act, and disbursements from the Surety

Fund are only made pursuant to § 4123.351 (§ 4123.351(D)(1)). All the specific provisions of the Act reference payments from a surety bond and from the Surety Fund.

As opposed to the specific provisions of § 4123.351, the State relies on the general provisions of § 4123.75 (having now abandoned § 4123.351(G) adopted in 1993). The general provision, however, only authorizes the State to "institute proceedings to recover from the employer any monies *paid from the surplus fund* and to secure the employer's payment of the award." The plain meaning of the words used in § 4123.75 establishes that the State cannot pursue Farley for payments made from the Surety Fund, a fund separate from the "surplus" fund. The State does not claim that it made payments to former Farley employees from the "surplus fund" referenced in § 4123.75; rather, the State admits that payments were made from the Surety Fund n/k/a the Guaranty Fund. *See* Second Amended Proof of Claim and Ohio Response filed Sept. 18, 1995. Even if § 4123.75 applied to Farley, and it does not, the State has not met the predicate of § 4123.75. This is why the State originally "premised" the Claim on § 4123.351(G)—it sought to recover payments from the Surety Fund, *not* payments made from the surplus fund. Its belated reliance on § 4123.75 is of no avail because Farley posted the requisite bond.

### CONCLUSION

Accordingly, by separate order, Farley's motion for Summary Judgment is allowed. Debtor's objection to Claim No. 509 is sustained. Claim No. 509 as amended will be entirely disallowed for reasons stated in this memorandum opinion. Since those reasons are dispositive, other issues argued by the parties need not be reached for decision.