In the Matter of Lamar CHAPMAN III, Debtor.

Lamar Chapman III, Plaintiff,

v.

Charles Schwab & Company, et al., Defendants, and Cross–Defendants,

Lamar Chapman III, Plaintiff,

v.

Beverly C. Smith, Defendant, and Counter–Plaintiff and Cross–Plaintiff,

Lamar Chapman III, Plaintiff,

v.

Robert E. Smith, Defendant, and Counter–Plaintiff and Cross–Plaintiff.

Bankruptcy No. 00 B 5538. Adversary Nos. 00 A 00358, 00 A 00884, 00 A 00886.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Aug. 15, 2001.

Lamar Chapman III, Matteson, IL, pro se.

Michael A. Kraft, Kane & Fisher, Peoria, IL, Ross Weisman, Weisman & Weisman, Chicago, IL, for defendant.

## MEMORANDUM OPINION

JACK B. SCHMETTERER, Bankruptcy Judge.

After filing his Chapter 13 bankruptcy case, debtor Lamar Chapman III ("Chapman") filed pro se [1] three adversary complaints against Defendants Charles Schwab & Company and two of its employees [Steven Murphy and Craig M. Louis] (collectively "Schwab") and Robert Smith and Beverly Smith (collectively "Smiths"). These cases have been litigated over the past 18 months and were consolidated because of their factual relationship. This opinion explains the basis for the orders issued on July 24, 2001, (1) denying Chapman's motion to dismiss the Smiths' counterclaim, (2) denying Chapman's motion to strike affidavits submitted in support of Schwab's motion for summary judgment, (3) granting summary judgment for Schwab, and (4) denying Chapman's motion for turnover of funds. It also explains the basis for an order entered August 8th for continued assumption of jurisdiction despite dismissal of Mr. Chapman's Chapter 13 case on his motion as a matter of right on the eve of consolidated trial of these cases.

Mr. Chapman has litigated here for many months his claims against Schwab and the Smiths. But he submitted not one piece of evidence to oppose the Schwab motion for summary judgment, and not one witness or document was submitted in compliance with the Final Pretrial Order. Instead, he only moved to strike the Schwab affidavits supporting summary judgment, and to dismiss the Smiths' counterclaim and ultimately his own suit against them.

If Mr. Chapman has any evidence to support any part of his Adversary complaints against Schwab and the Smiths, he has been unwilling or unable to present it in the light of day, and is unwilling or unable to subject such evidence to the scrutiny of trial. Instead he has sought to abort the long and expensive litigation started and pursued by him here, once learning that Schwab would win summary judgment and that the Smiths' counterclaim would be tried, by dismissing his Chapter 13 bankruptcy case and using his failure to obtain stay modification in the

---

1. Chapman represents himself, but he certainly is not a typical *pro se* litigant. He has considerable experience litigating in both state and federal courts. Chapman has been described as a "prolific pro se litigator in this district". *Chapman v. Ontra, Inc.*, 1997 WL 321681 (N.D.Ill. June 6, 1997). One opinion observed that Chapman "has cut a wide swath through the federal court system." *Chapman v. Village of Homewood*, 960 F.Supp. 127 (N.D.Ill.1997) His cases in this District and Circuit have included: *Chapman v. Village of Matteson*, 165 F.3d 31 (7th Cir. 1998); *Chapman v. Krop*, 1997 WL 598126 (N.D.Ill. Sept. 19, 1997); *Chapman v. Illinois*, No. 96–1254, 1996 WL 590554 (7th Cir. Oct. 10, 1996); *Chapman v. Currie Motors, Inc.*, 65 F.3d 78 (7th Cir.1995); *Chapman v. Burton Berger & Assocs.*, 154 B.R. 258 (Bankr. N.D.Ill.), aff'd, 159 B.R. 812 (N.D.Ill.1993), aff'd, No. 93–3525, 1995 WL 21519 (7th Cir. Jan. 18, 1995), cert. denied, 516 U.S. 853, 116 S.Ct. 153, 133 L.Ed.2d 97 (1995); *Chapman v. Illinois*, No. 92 C 0120, 1992 WL 6710 (N.D.Ill. Jan. 13, 1992), aff'd, No. 92–1385, 1992 WL 374017 (7th Cir. Dec. 18, 1992); *Chapman v. Gasperec*, No. 96 C 5299, 1996 WL 515186 (N.D.Ill. Sept. 6, 1996); *Chapman v. Citicorp Mortgage, Inc.*, Nos. 92 C 2862, 90 B 14910, 1992 WL 157499 (N.D.Ill. Jun. 23, 1992); and *Chapman v. Citicorp Mortgage Inc.*, No. 91 C 7990, 1992 WL 59289 (N.D.Ill. March 20, 1992).

Smiths' bankruptcy as a shield to prevent his own suit against the Smiths from being tried here.

## JURISDICTION

This court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157. This matter is referred here under District Court Internal Operating Procedure 15(a), and is a core proceeding under 28 U.S.C. 157(b)(2)(A) as to stay issues; (B) as to claims allowance and objections; (F) as to Chapman's preference claim; and (E) as to all of Chapman's requests for turnover of estate property pleaded under various theories. Venue lies in this district pursuant to 28 U.S.C. 1409(a).

## PROCEDURAL BACKGROUND AND PLEADINGS

The matters set forth in this section of the opinion are shown in the court files and pleadings of the parties, or were testified to by Chapman at a hearing in the Smiths' cases following entry of default orders against them (and before those orders were vacated).

### Chapman's Complaint Against Schwab

Chapman opened an Asset Management Account (the "account") with Schwab in March of 1999. The account was funded with an initial deposit of a $40,378 check. In April 1999, Chapman deposited an additional $77,810 in the form of two checks, one check for $68,510 and the other for $9,350. As a part of his account relationship, Chapman received a Visa Debit Card and a brokerage account with check writing privileges. Chapman reduced his account balance over several months. However, Schwab restricted access to Chapman's account on October 29, 1999, after the three checks discussed above were returned. In November of that year Chapman made several attempts to withdraw the remaining funds from his account, but those requests were denied by Schwab which had placed all remaining funds in a so-called "safe keeping account." Despite Chapman's repeated attempts during the fall of 1999 to get Schwab to release the funds, Schwab always refused to release the monies. On February 18, 2000, Schwab reiterated in a letter that it would not allow Chapman to access the remaining funds.

Chapman filed this Chapter 13 bankruptcy petition on February 24, 2000. In March he filed a motion against Schwab under 11 U.S.C. § 547 claiming that Schwab had made a preferential transfer of funds within the 90–days prior to the bankruptcy petition being filed. The court advised Chapman that he had to file an adversary complaint under Rule 7001 Fed. R.Bankr.P. if he wished to pursue that money claim against Schwab, and Chapman did so. His Adversary proceeding here against the Schwab defendants seeks turnover of his Schwab account under various theories.

Schwab filed a proof of claim in Chapman's Chapter 13 case for $77,860 plus expenses and interest, which allegedly arose from an obligation to indemnify its depository which was being sued by the drawee for the two checks deposited into Chapman's account in April of 1999. Chapman objected to allowance of the Schwab claim, and that litigation was consolidated for trial with the Adversary proceedings. (That claim was recently stricken as moot after Chapman dismissed his Chapter 13 case). A Final Pretrial Order was entered February 12, 2001, setting the Schwab litigation to start trial August 1st. An Amended Consolidated Final Pretrial Order brought the Smiths' litigation into the procedures set with trial still to start August 1st. Under circumstances described below, that trial dates were stricken and new dates will be set.

Schwab moved for summary judgment against Chapman in its Adversary case on June 15, 2001, and produced several depositions and affidavits in support of that motion. Chapman was given until July 10, 2001, to file his answer and any supporting materials pursuant to Local Bankruptcy Rule 402(N). Chapman failed to file his answer by July 10th, and instead requested additional time to file his response and materials. He was granted an extension until July 16. Chapman filed no response or affidavits opposing summary judgment, but did file a motion to strike all Schwab's affidavits offered in support of the motion for summary judgment.

On July 23 Chapman filed a motion to dismiss his Chapter 13 case pursuant to § 1307(b) of the Bankruptcy Code, Title 11 U.S.C. However, prior to the hearing date set for that motion Chapman moved for an additional two-day extension to file his materials in answer to Schwab's summary judgment motion. In response to questions posed by the court, Chapman acknowledged that he was still unprepared that day to offer any material at all for filing in opposition to the Schwab motion. The court therefore denied Chapman's request for additional time and entered an order allowing Schwab's motion for summary judgment on all counts for reasons to be discussed in this Opinion. At a hearing on August 1st, Chapman's motion to dismiss his bankruptcy was granted. However, for reasons set forth below, the court will exercise its discretion to retain jurisdiction over remaining issues in the Adversary complaint both to enter the final summary judgment order and to complete litigation of the Smiths' case.

Chapman moved on August 1st for reconsideration of the court's decision to give summary judgment to Schwab and again requested an additional two days to reply to Schwab's motion. Although on July 23rd, Chapman had indicated that he only needed two days to file materials, on August 1st Chapman was again not prepared to tender at that time any materials whatsoever to controvert the summary judgment materials submitted by Schwab, as required under Local Bankruptcy Rule 402(N). Because he had nothing ready to file, this second request for a two-day extension was denied. Almost two weeks have passed since that ruling, but Chapman has not appeared with any further request to file materials before judgment be entered. Two months in all have passed since the motion was filed and Chapman has not filed any materials contradicting the facts and documents asserted. Accordingly, upon entry of this Opinion, the final summary judgment order in favor of Schwab defendants will be entered.

### Chapman's Complaint Against the Smiths and their Counterclaims

The Smiths were not included among Chapman's scheduled creditors. Notice was sent to scheduled creditors on May 5, 2000, and the claims bar date was fixed for August 28, 2000. On September 26, 2000, Chapman filed these adversary complaints against Robert and Beverly Smith, each alleging breach of contract (Count I), slander (Count 2), and invasion of privacy (Count III). Chapman averred that the Smiths owed him in excess of $36,000 for unpaid loans, expenses, and unpaid bills for consulting services. Counsel for the Smiths appeared on October 31, 2000, and was given 28 days to file an answer to Chapman's complaint. However, the Smiths did not file their answer by the due date. On November 28, 2000, the case was continued until December 13. But once again, the Smiths failed to file their answer. On January 5, 2001, Chapman moved for a default against the Smiths. Default orders against the Smiths were

entered on January 29, 2001, and the cases were set for prove-up on February 9. On February 7 new counsel for the Smiths appeared and moved to vacate the default orders, asserting that the Smiths were unaware that their former counsel had neglected the cases, and as soon as they became aware of the defaults they responded with new counsel to protect their interests. The court did not then grant the motions to vacate the defaults because there was no tender of proposed Answers to the Complaint showing defenses.

At the February 9 prove-up hearing, Chapman testified that he was retained by the Smiths as a business consultant to assist with refinancing of their home and to negotiate a settlement of an IRS tax lien. He produced an agreement signed by the Smiths wherein they stated in relevant part: "... you agree by executing this retainer agreement to compensate the undersigned for all work done on your behalf in the amount of $1,487.50 to be applied to this retainer agreement for payment of actual costs and expenses. You further agree to pay any and all monthly statements upon receipt." He said that this agreement was the only writing executed by those parties. Chapman admitted that the Smiths had paid the $1,487.50 specified in the agreement. However, he claimed that he had worked on projects for the Smiths for over 18 months without pay, and that they owed him over $21,000 in fees. Chapman also stated that the Smiths had failed to repay a $7,150 car loan, from monies advanced by him, which he says was documented by a check for that amount produced at the hearing. He also asserted that the Smiths refused to repay money that he had paid to a law firm to represent them in an action involving one of their creditors.

Chapman was unable to provide any written documentation to support his claim that the $7,150 was a loan or that each of the foregoing transactions was part of his work as a consultant for the Smiths. Chapman admitted that he had altered two checks made payable to the Smiths and deposited the checks into his personal account at Schwab. Both checks were issued by Stewart Title Company to refinance the Smiths' home. One for $68,510 was payable to the IRS, and the other check for $9,350 was made payable to Fawn Landscape & Nursery. Chapman admitted adding "Lamar C. Chapman, III, for the benefit of Robert E. Smith and Beverly C. Smith" above the names of the payees on each check. Chapman claimed that this was done by oral authorization of the Smiths.

Chapman also acknowledged that the checks produced at the hearing, which he says documented the loan and expenses he is seeking from the Smiths, were drawn against the same Schwab account into which he deposited the Smith checks. However, Chapman claimed that the Smiths alleged indebtedness to him was unaffected by the fact that he obtained and used funds from their loan proceeds in his account which far exceeded the amount of their purported debt to him. According to Chapman, those funds were "security" for the debt owed by the Smiths. Again, Chapman did not offer any writing to support his assertion of a security agreement with the Smiths. But Chapman did acknowledge that some "refund" is owed to the Smiths. Chapman also stated: "I was hoping that Mr. and Mrs. Smith would retain counsel. I was hoping that Mr. and Mrs. Smith would file an answer and a counterclaim so this court would have some additional information to assist me in my dealing with the Schwab litigation...."

Based on the evidence offered at the prove-up hearing, no default judgment was entered in order to allow the Smiths until

February 27 to file Answers. The Smiths filed their Answers to Count I on February 23, later supplemented by their Answers to Counts II and III on March 14, 2001. Orders were later entered in the two Smith cases vacating the default orders, and denying the Chapman motions for default judgments.

On April 2, the Smiths moved to have their case consolidated with Chapman's Adversary complaint against Schwab and for leave to file a counterclaim against Chapman and a cross-complaint against Schwab. The court granted that motion, and on April 24 the Smiths filed a counterclaim against Chapman for conversion. They also filed a cross-complaint against Schwab seeking a declaratory judgment that they are the rightful owners of the funds held by Schwab (since dismissed by agreement of those parties).

## DISCUSSION

### I. CHAPMAN'S MOTION TO DISMISS THE SMITHS' COUNTERCLAIMS

Chapman contends that the Smiths' counterclaim violates the automatic stay under 11 U.S.C. § 362 and that their claim is barred as untimely, pursuant to 11 U.S.C. § 502(b)(9). The Smiths responded that they did not receive notice of Chapman's bankruptcy until after the claim bar date when they were sued by Chapman; therefore, they could not file their claim prior to the bar date. They further note that this court allowed the filing of their counterclaim. For reasons discussed below, Chapman's motion to dismiss is denied.

### Automatic Stay

The automatic stay provision of 11 U.S.C. § 362 is a basic protection for debtors under the Bankruptcy Code. *In re Fernstrom Storage and Van Co.*, 938 F.2d 731, 735 (7th Cir.1991) (citing *Midlantic*

*Nat'l Bank v. New Jersey Dept of Envtl. Protection*, 474 U.S. 494, 503, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986)). Section 362 of the Code provides in relevant part:

(a) Except as provided in subsection (b) of this section, a petition filed under 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

. . . .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

. . . .

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362.

Section 362 provides a "nearly comprehensive" stay of any actions to collect a prepetition debt from the debtor. *Fernstrom*, 938 F.2d at 735. Thus, even a party filing a compulsory counterclaim is advised to seek permission to file that counterclaim. 6 William L. Norton, Jr., Norton Bankruptcy Law and Practice 2d § 139:9.

Chapman contends that the Smiths violated the automatic stay because they failed to get approval from the court before filing their counterclaim. But the Smiths filed a motion seeking to have their case consolidated with the Schwab adver-

sary and for leave to file a counterclaim against Chapman. Chapman did not file a response to the Smiths' motion, and the motion was granted by this court in its order of April 24, 2001. Since the filing was permitted, Chapman's argument that the Smiths violated the stay is without merit. Moreover, it is ironic that Chapman who recognized objections to honor the automatic stay has recently used his own failure to seek stay modification to pursue suits against the Smiths after they filed in bankruptcy, as a shield to prevent completion of his own pending litigation.

 However, assuming *arguendo* that the Smiths had not sought leave to file their counterclaim, the filing would not violate the stay. This is because the counterclaim is in the nature of a recoupment defense, and the automatic stay does not apply to the claim of recoupment.

It is well settled ... that a bankruptcy defendant can meet a plaintiff-debtor's claim with a counterclaim arising out of the same transaction, at least to the extent that the defendant merely seeks recoupment. Recoupment permits a determination of the "just and proper liability" on the main issue, and involves "no element of preference."

*Reiter v. Cooper*, 507 U.S. 258, 265, 113 S.Ct. 1213, 122 L.Ed.2d 604 Fn.2 (1993).

 Recoupment is a defense whereby the creditor claims that a debtor's claim is based on a transaction in which the creditor has a claim against the debtor, and equity demands that the debtor's claim cannot be considered without taking account of the creditor's claim. The requirements for recoupment are based on common law pleading rules. *Coplay. Cement Co. v. Willis & Paul Group*, 983 F.2d 1435, 1440 (7th Cir.1993) (recoupment is the ancestor of the compulsory counterclaim). The doctrine of recoupment must be narrowly construed because it alters the Code's policy favoring equal treatment of creditors. *In re McMahon*, 129 F.3d 93, 97 (2d Cir.1997). The transaction upon which the debtor's claim is based must be so closely intertwined with the creditor's claim that the amount of the former cannot be fairly determined without resolving the latter. *In re St. Francis Physician Network, Inc.*, 213 B.R. 710, 719 (Bankr. N.D.Ill.1997). The trustee or debtor takes property subject to the right of recoupment. *In re Holford v. Powers*, 896 F.2d 176, 179 (5th Cir.1990) (citation and quotations omitted). "[T]o the extent the damages equal or exceed the funds withheld, the debtor has no interest in the funds and, therefore, the stay has not been violated." *Id.*

 The weight of authority holds that recoupment does not violate the automatic stay. See *McMahon*, 129 F.3d at 96 (citation omitted); *In re Flagstaff Realty Assoc.*, 60 F.3d 1031 (3rd Cir.1995); *Holford*, 896 F.2d at 176; *Ashland v. Appel (In re B & L Oil Co.)*, 782 F.2d 155 (10th Cir.1986) (creditor allowed to recoup prepetition overpayments from payment for post-petition purchase); *St. Francis*, 213 B.R. at 716; (recoupment is not subject to same limitations of set-off); *In re 105 East Second Street Assoc.*, 207 B.R. 64, 69–70 (Bankr.S.D.N.Y.1997); *In re Norsal Industries, Inc.*, 147 B.R. 85, 88 (Bankr. E.D.N.Y.1992); *In re Rooster*, 127 B.R. 560 (Bankr.E.D.Pa.1991); *In re Visiting Nurse Ass'n.*, 121 B.R. 114, 119 (Bankr. M.D.Fla.1990); *In re American Central Airlines, Inc.*, 60 B.R. 587, 590 (Bankr. N.D.Iowa 1986). The right of a creditor to bring an action for recoupment is determined by state law. *McMahon*, 129 F.3d at 96. Illinois law allows recoupment both in tort and contract.735 Ill. Comp. Stat. § 5/2–608.

Chapman's claim against the Smiths cannot be adjudicated without also resolving the Smiths' claims against Chapman. The two claims are so closely intertwined that equity requires that determination of the former be related to the outcome of the latter. *St. Francis*, 213 B.R. at 719. At bottom those parties seem to agree that some sort of relationship existed between the Smiths and Chapman. Putting aside the factual issue of whether the Smiths owe Chapman for his services, Chapman may have owed a fiduciary duty to the Smiths from the delivery to him of the two checks in issue obtained from their lending bank. It must be determined whether such duty existed, and if so whether such duty was violated if (as the Smiths contend) Chapman converted their property. The Smiths may not owe Chapman payment for his services during any time in which he was wrongfully withholding (if that be so) the Smiths' property. Thus, the counterclaim must be resolved along with Chapman's claim for damages before unpaid fees assertedly due him can be resolved.

Moreover, Chapman admitted in his testimony at the prove-up hearing that the purported "car loan" and attorneys fees he says he paid for the Smiths were made from the Schwab account. So the determination of the ownership of funds going into that account is crucial to deciding Chapman's complaints against the Smiths. (Indeed, summary judgment granted to Schwab for reasons discussed below rests in part on finding that deposits in the Schwab account did not and do. not belong to Chapman).

The Smiths' counterclaim is in the nature of an affirmative defense to recover the funds they allege were converted and to offset Chapman's claims against them. Given that their claim arose from the same transaction as Chapman's and that the two claims are so closely related, the Smiths' counterclaim is a recoupment action under Illinois law. 735 ILCS § 5/2–608. So even if court permission had not been obtained, it is incorrect to assert that the automatic stay would have barred them from filing it.

### Chapman's § 502(b)(9) Objection to Untimeliness

■ Chapman argues that the Smiths' counterclaim is nothing more than an attempt to file a time-barred claim against his estate. While the Smiths' counterclaim is indeed a claim as defined in Section 101(5) of the Code, for reasons discussed below the assertion that the Smiths' claim is time barred is incorrect.

A creditor in bankruptcy is anyone with a prepetition claim against the estate. 11 U.S.C. §§ 101(10), 301; *Fogel v. Zell*, 221 F.3d 955, 960 (7th Cir.2000). Section 101(5)(A) of the Code broadly defines a claim to include any legal or equitable right to payment. 11 U.S.C. § 101(5)(A); *Fogel*, 221 F.3d at 960.

In 1994 Congress added Section 502(b)(9) to the Bankruptcy Code to deal with untimely filed claims. 11 U.S.C. § 502(b)(9); Bankruptcy Reform Act of 1994, Pub.L. No. 103–394 § 213, 108 Stat. 4106, 4125–26 (1994). The purpose of the amendment was to overrule *In re Hausladen*, 146 B.R. 557 (Bankr.D.Minn.1992) and its progeny which had reasoned that absence of an explicit bar for late-filed claims in the Code meant that such claims were permissible. H.R.Rep. No. 103–835, at 48 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3357. The new law, as amended, provides:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party interest ... objects.

(b) ... [I]f such objection to a claim is made, the court, after notice and a hear-

ing ... shall allow such claim ... except to the extent that—

. . .

. . .

(9) proof of claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726 of this title or under the Federal Rules of Bankruptcy Procedure....

11 U.S.C. § 502(a) and (b)(9). Section 726 only applies to Chapter 7 cases. *United States v. Jones*, No. 1:99–CV–629, 2000 WL 1175717 *2 (Bankr.W.D.Mich.2000).

 The Bankruptcy Code does not set specific time limits for filing claims; Congress has left this determination to the Federal Rules of Bankruptcy Procedure. "The Rules of Bankruptcy Procedure will set time limits, the form, and the procedure for filing, which will determine whether claims are timely filed." *In re Tucker*, 174 B.R. 732, 736 (Bankr.N.D.Ill. 1994) (quoting congressional record citations omitted). Bankruptcy Rule 3002(c) states in relevant part that "... a proof of claim shall be filed within 90 days of the first date set for the meeting of the creditors called pursuant to § 341(a) of the Code...." Fed.R.Bankr.P. 3002(c). The time limits set in Rule 3002(c) cannot be enlarged by the bankruptcy court. Fed. R.Bankr.P. 9006(b)(3) (limiting time extensions to those provided in Rule 3002(c)); *Matter of Greenig*, 152 F.3d 631, 635–36 (7th Cir.1998) (bankruptcy court has no equitable power to extend time limits in a Chapter 13 case). These rules are promulgated under the rule making authority of the Supreme Court, and as such they have the force of law. See Rules Enabling Act, 28 U.S.C. § 2075; *In re Vaughn*, 151 B.R. 87, 89 (Bankr.W.D.Tex.1993) (citation omitted).

Therefore, a creditor who fails to file a claim before the bar date will usually have its claim "disallowed" under Section 502. *Tucker*, 174 B.R. at 742. Most opinions have treated Rule 3002(c) as a statute of limitations in the context of Chapter 13 cases. *See In re Mid–Miami Diagnostics, LLP*, 195 B.R. 20, 21 n. 2–3 (Bankr. S.D.N.Y.1996) (listing cases barring late-filed claims).

However, implicit in Section 502(b)(9) and Rule 3002(c) is the assumption that the creditor has received notice of the bankruptcy. *In re Dodd*, 82 B.R. 924, 928 (Bankr.N.D.Ill.1987). "[T]he drafters of the Bankruptcy Code envisioned a sequence of events whereby a debtor or trustee would first file the list of creditors, schedules of assets and liabilities, and a statement of the debtor's financial affairs. Then, those creditors ... would ... upon notice, file proofs of claim." *In re O.P.M. Leasing Services, Inc.*, 48 B.R. 824, 831–32 (S.D.N.Y.1985) (citing legislative history).

 The Bankruptcy Code and Rules make this expectation clear by requiring that a list of creditors be filed with the petition for relief (11 U.S.C. § 521(1) and Fed.R.Bankr.P. Rule 1007(a)(1)). That list is used by clerk to give notice of the bankruptcy (11 U.S.C. § 342) and notice of the bar date and other information needed by creditors to protect their rights (Fed. R.Bankr.P. Rule 2002 et. seq), and for scheduling a meeting of creditors (11 U.S.C. § 341). These notice requirements are mandated by the principle of due process which applies equally to bankruptcy cases and non-bankruptcy cases under our system of jurisprudence. *City of New York v. New York; New Haven & Hartford R.R. Co.*, 344 U.S. 293, 297, 73 S.Ct. 299, 97 L.Ed. 333 (1953) (in pre-Code case the court held that notice is required before a party could be deprived of property); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652,

94 L.Ed. 865 (1950); *Fogel,* 221 F.3d at 962 (citations omitted). It is axiomatic that the Code and the Rules are subordinate to requirements under the Constitution's 5th Amendment. See reasoning in this court's opinion *In re Marino,* 195 B.R. 886, 891 (Bankr.N.D.Ill.1996) and *In re Anderson,* 159 B.R. 830 (Bankr.N.D.Ill. 1993); *In re Broomall Industries, Inc.,* 786 F.2d 401, 403 (Fed.Cir.1986) (noting that discharge provisions of § 1141 are superceded by 5th Amendment requirement that creditor have notice of bankruptcy before its claim can be discharged). "Fair and adequate notice has two elements: content and delivery." *Fogel,* 221 F.3d at 962. The debtor has the burden to give the creditor the constitutionally required notice. *In re Hairopoulos,* 118 F.3d 1240, 1244 (8th Cir.1997).

A number of Chapter 11 cases have allowed creditors to file late claims when, as here, the creditors did not in fact receive adequate and timely notice of the bankruptcy. *In re Pettibone Corp.,* 162 B.R. 791, 806–09 (Bankr.N.D. Ill.1994) (Judge Schmetterer); *In re Hillsborough Holdings Corp.,* 172 B.R. 108, 111–12 (Bankr.M.D.Fla.1994); *Linder v. Trump's Castle Assoc.,* 155 B.R. 102, 108 (D.N.J. 1993); *In re B.C. Enterprises Ltd.,* 160 B.R. 827, 831–32 (Bankr.D.Ariz.1993); *Interstate Cigar Co.,* 150 B.R. 305, 310 (Bankr.E.D.N.Y.1993) Cf. *In re Intelligent Medical Imaging, Inc.,* 262 B.R. 142 (Bankr.S.D.Fla.2001) (court refusing to allow late-filed claim where creditor had adequate notice of bankruptcy but delayed filing claim past bar date). These cases held due process to require that creditors have adequate notice before their property rights can be extinguished in bankruptcy.

After the 1994 enactment of § 502(b)(9), due process concerns like those discussed in Chapter 11 cases when the creditor does not receive notice of the bankruptcy can also arise in Chapter 13 cases. *In re Hildebrand* held due process to require that a creditor without actual or constructive knowledge of the bankruptcy must be allowed to file a tardy claim if the creditor acts promptly after learning of the bankruptcy. *In re Hildebrand,* 245 B.R. 287, 290 (M.D.Tenn.2000) (citing *United States v. Cardinal Mine Supply, Inc.,* 916 F.2d 1087, 1089 (6th Cir.1990)). *See also In re Smith,* 217 B.R. 567 (Bankr.E.D.Ark.1998) (allowing late-filed claim where debtor failed to give adequate notice to creditor).

In this case Chapman failed to schedule the Smiths on his schedules when he filed his bankruptcy case. Chapman acknowledged in his prove-up testimony that he held funds belonging to the Smiths in his personal Schwab account. (Tr. of Chapman at February 9 hearing). A claimant includes anyone with a prepetition claim against the debtor, and a claim is any right to payment being asserted against the debtor. *Fogel,* 221 F.3d at 960. Chapman admits taking two checks which were obtained by the Smiths from refinancing of their home, adding his name as payee, and depositing them into his personal account at Schwab. (Tr. of Chapman at February 9 hearing). Even if the Smiths owe Chapman something for services, as he alleges, Chapman may still owe the Smiths even more for the check proceeds. Clearly then, the Smiths were claimants who should have been scheduled when Chapman filed his case.

Chapman's failure to include the Smiths among his scheduled creditors was a clear violation of the Code and the Rules. 11 U.S.C. §§ 521, 342, 341 and Rule 1007(a)(1) and 2002(a). As a sophisticated debtor familiar with bankruptcy (Chapman has filed in bankruptcy before), he should have been aware that the Smiths should have been scheduled in his bankruptcy filing. A similar situation confronted the court in *Hildebrand* where it was

decided that the dictates of due process militated against a mechanical application of the time bar incorporated into § 502(b)(9) by Rule 3002(c). *Hildebrand,* 245 B.R. at 289, 290. The reasoning in *Hildebrand* is consistent with this court's analysis in several earlier cases. *See Marino,* 195 B.R. at 891; *Pettibone,* 162 B.R. at 806–09; *Anderson,* 159 B.R. at 839. As the *Hildebrand* opinion stated there is nothing in the Code that supports the view that § 502(b)(9) and Rule 3002(c) are more important than Sections 521, 342, and 314 of the Code or Rules 1007 and 2002(a) of the Federal Rules of Bankruptcy Procedure. *Hildebrand,* 245 B.R. at 290. To allow Chapman to disallow the Smiths' claim would discourage compliance with the rules requiring that creditors receive adequate notice of a debtor's bankruptcy. A debtor has the burden of giving proper notice to creditors, and failure to give adequate notice should not inure to the detriment of the creditor. *Anderson,* 159 B.R. at 839. Moreover, due process must be afforded to parties in bankruptcy, as it applies to parties outside of bankruptcy. *Fogel,* 221 F.3d at 962; *Dodd,* 82 B.R. at 928 (due process requires that creditor receive notice and the opportunity to be heard). If Chapman were able to disallow the Smiths' claim because he gave them no notice of the bankruptcy until after the bar date, he would have succeeded in depriving them of their property rights and the procedural due process protections contained within the Code. *See Crites,* 201 B.R. at 280–81 (noting procedural due process rights that creditor loses when he does not receive notice of bankruptcy). This cannot be allowed, and the Chapman motion to dismiss the Smiths' counterclaim for untimeliness must be denied.

## II. *CHAPMAN'S MOTION TO STRIKE THE SCHWAB AFFIDAVITS*

Chapman moved to strike all seven affidavits submitted in support of Schwab's motion for summary judgment. He asserted essentially the same objections to each of them: (1) the affidavit is not made on personal knowledge, and affiant has failed to show that he or she is competent to testify to the matters contained in the affidavit; (2) the affidavit fails to set forth specific facts as would be admissible evidence; (3) the affidavit contains conclusory statements unsupported by facts, and (4) the documents, or certified copies thereof, mentioned in some of the affidavits are not attached to the affidavit. For reasons discussed below, Chapman's objections are all held to be without merit.

■ "An affidavit is a statement reduced to writing and the truth of which is sworn to before someone who is authorized to administer the oath." *Pfeil v. Rogers,* 757 F.2d 850, 859 (7th Cir.1985) (citations omitted). An affidavit is not admissible evidence at trial because it violates the hearsay rule. However, affidavits can be used in summary judgment proceedings. The requirements for a valid affidavit are found in Rule 56(e) Fed.R.Civ.P. made applicable to bankruptcy litigation under Rule 7056 Fed.R.Bankr.P.

■ Rule 7056 has four requirements: (1) the affidavit must be made on the personal knowledge of the affiant; (2) the affidavit must set forth facts which would be admissible at trial; (3) the affidavit must show affirmatively that the affiant is competent to testify to the matters therein; and (4) if the affiant refers to written documents within the affidavit, sworn or certified copies of the documents must be attached to the affidavit or served therewith.

A Seventh Circuit opinion *en banc* emphasized the personal knowledge requirement:

[W]itnesses who are not expert witnesses ... are permitted to testify only from their knowledge. Testimony about matters outside their personal knowledge is inadmissible, and if not admissible at trial then neither is it admissible in an affidavit to support or resist the grant of summary judgment ... It is true that personal knowledge includes inferences—all knowledge is inferential—and therefore opinions. But the inferences and opinions must be grounded in observation or first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from their experience.

*Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir.1991) (en banc) (citations omitted).

■■■■ Self-serving statements which are conclusory statements of law or fact are not permissible under Rule 7056(e). *Drexel v. Union Prescription Centers, Inc.*, 582 F.2d 781, 789–90 (3rd Cir.1978); *Bryson*, 187 B.R. at 950. The basic policy underlying Rule 7056(e) is to allow in an affidavit only evidence that could be admitted through witnesses testimony at trial. *Pfeil*, 757 F.2d at 860 (quoting 6 Moore's Federal Practice, § 56.22[1] at 1321–22 (1982)). Thus, if affiant's statement is hearsay and does not fit within one of the exceptions to hearsay, that part of the statement must be stricken or disregarded, or the entire affidavit must be stricken. *In re Sonicraft, Inc.*, 238 B.R. 409, 417 (Bankr.N.D.Ill.1999).

■■■■ Regularly kept business records are an exception to the hearsay rule, and therefore may be shown through an affidavit. *United States v. Birchem*, 100 F.3d 607, 610 (8th Cir.1996). An affiant who relies on a business record does not have to be the person who actually made the record; the only requirement is that

the affiant be able to attest to authenticity of the record. *United States v. Smith*, 609 F.2d 1294, 1302 (9th Cir.1979). Moreover, given that a corporation can only testify through its representatives, affidavits can be made on behalf of a corporation by its duly authorized agent. *In re Ben Weiss Company*, 271 F.2d 234, 235 (7th Cir.1959). Courts should not be overly technical and insist on absolute perfection in determining whether to strike an affidavit. *Pfeil*, 757 F.2d at 859 (court refusing to strike affidavit which lacked notarial seal). Finally, Rule 7056 allows an offending affidavit to be cured by supplemental material, which includes material produced in response to an objection. *In re Jackson*, 92 B.R. 987, 992 (Bankr.E.D.Pa.1988).

■■■■ The foregoing principles guided review of the Schwab affidavits, and lead to denial of Chapman's motion to strike.

### *Brian Donnelly ("Donnelly") Affidavit*

Donnelly is an agent of Donnelly Transportation Inc., which was payee on the United States Shippers Inc. ("USSI") check for $40,378.00 (Schwab's Exhibit 1). Donnelly's affidavit is a copy of a form affidavit that he originally gave to Frontier Bank ("Frontier"), which is USSI's drawee. The check was returned by USSI to Frontier because USSI did not recognize the endorser on the check which had been endorsed by Chapman. Frontier then contacted Donnelly and was informed that Donnelly had not received the check and that it did not recognize or authorize the endorsement. Donnelly then filled out the form from Frontier which is the affidavit submitted by Schwab. Chapman contends that the affidavit must be stricken in its entirety because the affidavit is not made on personal knowledge, does not set forth admissible evidence, does not affirmatively show that affiant was competent to testify to the matters in the affidavit, and the

year is missing from the Jurat of the Notary Public. Moreover, Chapman also complained that a check referred to in the affidavit was not attached.

A Seventh Circuit opinion held that affidavits should not be struck for "hypertechnical" reasons. *Pfeil,* 757 F.2d at 859. Therefore, Chapman's complaint about the year missing from the notarization is not substantive and should not result in the affidavit being stricken. The affidavit was duly sworn to before a Notary Public of the State of Illinois and that minor defect in no way prejudiced Chapman.

Schwab mooted some complaints by filing a supplemental affidavit dated July 20, 2001. That supplemental affidavit is allowed under Fed.R.Bankr.P. 7056. As for Chapman's other objections, upon examining the check (which Chapman earlier admitted that he signed), Donnelly is certainly competent to say on personal knowledge whether he or his company authorized Chapman to sign a check made payable to the Donnelly company.

### Cheri Neil Affidavit

Ms. Neil is an employee of the accounting department at USSI. Her affidavit was used to certify documents produced by USSI that show the allegedly improperly endorsed check (document 1), the invoices received from Donnelly which the check was originally issued to pay (document 3), and the stop payment order on the check endorsed by Chapman issued after Donnelly reported the check as lost (document 10). Ms. Neil also states that there are no records in the possession of USSI showing that Chapman provided any services to the company or that he was authorized to cash the Donnelly check. (Neil Aff. ¶ 12).

Chapman objects that Neil does not have personal knowledge, has failed to set forth facts admissible as evidence, fails to show she is competent to give the affidavit, and that Neil's paragraph 7 makes conclu-

sory statements unsupported by facts. Chapman's objections are a mere recital of the requirements of Rule 7056(e). Chapman cites *MCI Telecommunications Corp. v. Ameri–Tel, Inc.,* 881 F.Supp. 1149 (N.D.Ill.1995); and *Gorenz v. Illinois Dept. of Agric.,* 653 F.2d 1179 (7th Cir. 1981). Both cases involved summary judgment issues. *MCI* recited the rule that a conclusory assertion unsupported by specific facts will not defeat a proper motion for summary judgment. *Gorenz* reversed summary judgment where the Appeals Court decided that an unsigned document, purporting to show the ownership of property, was insufficient to show ownership. Neither case applies here. The documents submitted by Neil are business records that Neil is familiar with as an employee of USSI's accounting department. (Neil ¶ 10). Her affidavit shows she is competent to give the testimony contained in the affidavit. (Neil ¶ 1, showing she is employee of Accounting Dept.). Her testimony at trial would be admissible under Fed. R.Evid. 803(6). It is not necessary for the custodian of records to have been present when the records were made; the only requirement is that she is in a position to attest to authenticity of the records. *Smith,* 609 F.2d 1294 at 1302 (9th Cir. 1979).

Finally, Chapman states that paragraph 7 of the affidavit is a conclusory statement, but that paragraph merely stated factually that the check was made payable to Donnelly for its invoices submitted with the affidavit.

Accordingly, the regularly kept business records are admissible evidence and Neil is competent to certify those records.

### Terri Stefnik Affidavit

Ms. Stefnik is the Assistant Vice President of Operations at Frontier Bank. She contacted Brian Donnelly after the $40,378

check was returned to her bank by USSI. Donnelly then gave his affidavit stating that he did not know Chapman nor did he authorize the endorsement of the check by Chapman. Stefnik then submitted a claim to Schwab's Bank (First Tennessee Bank) to recover the $40,378.

Chapman objects that paragraph 3 contains a conclusory statement. But the affiant in that paragraph merely stated that the check was returned to the Bank by its customer because the endorsement was unauthorized. The affiant is not relaying a statement made by the customer; rather, she is referring to a copy of the returned check which she examined and the affidavit given by the payee of the check wherein he stated that the signature was unauthorized. This is a statement made from the personal knowledge of the affiant about events that occurred. It is not intended to prove the check was unauthorized, but rather is offered to show why affiant processed a claim to First Tennessee Bank for return of the $40,378.

Chapman also objects that this affidavit should be stricken because a copy of the check referenced in the affidavit was not attached to the affidavit. As stated above, this is a minor defect where Chapman has already identified and admitted signing the check. (Chapman Deposition ¶ 333). Chapman relies on *Dempsey v. Atchison, T. & S.F. Ry.*, 16 F.3d 832 (7th Cir.1994) to support his position. However, *Dempsey* only recited the well-settled rule that a motion for summary judgment cannot be defeated by conclusory allegations. *Id.* at 842. *Dempsey* held that a statement by the plaintiff's witness responding to an affidavit by Chairman of the defendant corporation was merely a conclusory statement which, unsupported by any other evidence, could not show a triable issue of fact so as to deny defendant's summary judgment. Here the affidavit meets all

four requirements under Fed.R.Bankr.P. 7056(e) and does not comprise conclusory statements.

The present case is also distinguishable from *In re Caddie Construction Co. Inc.*, 125 B.R. 674, 677–78 (Bankr.M.D.Fla.1991) where an affidavit of a trustee was stricken because the statement was based on hearsay. Here, the documents relied on by Stefnik are excepted from the hearsay rule by 803(6) of the Evidence Rules. Finally, while it was unnecessary in light of the above, Schwab has submitted a supplemental affidavit which has a copy of the subject check attached. (Defendant's Reply Brief In Support of Motion for Summary Judgment with Supplemental Affidavit of Terri Stefnik).

### Craig Louie Affidavit

Craig Louie is the Director of Fraud Prevention at Schwab. His affidavit goes to establishing the circumstances under which the three checks were returned to Schwab. Louie also states why he issued the order to block access to Chapman's Schwab account, and why as a result of this order the designation on the account was changed from "TP2231–3146" to "ZZ TP2231–3146."

Chapman contends that the statements made by Louie at paragraphs 6, 7, 9, and 10 are conclusory. However, if Louie could testify to these statements at trial then the affidavit is proper. *Pfeil*, 757 F.2d at 860.

Louie stated that the ZZ designation was placed on Chapman's account after he was notified that the three checks deposited into Chapman's Schwab account were being dishonored due to Chapman's unauthorized signature. Chapman cannot preclude Louie from giving testimony about why the designation was changed on the account when one of the counts of Chapman's complaint is that such a designation was a form of racial profiling. Louie's

statement is derived from his personal knowledge having been the person who investigated the claims relating to these checks for Schwab. Also, Louie reviewed the checks in question and stated specific facts relating to the checks such as the amount, the payee, the drawer and endorser, and the amounts of each check. Therefore, his statements at paragraphs 6, 7, 8, and 9 are admissible.

However, one statement at paragraph 10 is more troubling. Here he asserted that Chapman read and accepted Schwab's Polices contained in the Account Agreement which he claims was given to Chapman when he opened his account. Louie did not show that he knew Chapman even received the Account Agreement, so that part of paragraph 10 cannot be used to support summary judgment though the affidavit itself will not be stricken.

Finally, Chapman seeks to strike the affidavit because the Schwab Account Agreement which accompanies the Affidavit is not sworn or certified. But Louie incorporated that document in his sworn affidavit at paragraph 10. Also this same document has been submitted by Chapman in his complaint and its authenticity is therefore not shown to be in issue.

### The Smiths' Affidavit

The Smiths' affidavits are identical. Each states that they refinanced their home through Stewart Title and that Chapman without their knowledge or consent obtained the two checks from the lender which were then deposited into Chapman's Schwab account. Chapman contends that the Smiths are not competent to testify to the matters stated in their affidavits. But obviously the Smiths were in a position to know what they did to refinance their home. The Smiths also know whether they have received check proceeds and to whom the checks were made payable. The Smiths may also infer

that Chapman took the proceeds of their checks improperly since they say that those checks ended up in Chapman's Schwab account without their knowledge or consent. However, their legal conclusion as to what such events meant are not to be accepted as part of the affidavit; the reviewing judge must draw any legal conclusions.

### Charmaine M. Lowe Affidavit

Ms. Lowe is the Assistant General Counsel for Stewart Title. Lowe states that she is familiar with regularly kept records accompanying her affidavit, that she has examined the same, and that she is authorized to speak for Stewart Title. She states that the Smiths refinanced with her company and that two checks were issued. The first check was payable to the U.S. Internal Revenue Service for $68,510, and the second was payable to Fawn Landscape & Nursery for $9,350. Copies of the unaltered checks accompany Lowe's affidavit as Exhibits 1 and 2. Lowe stated that the two checks were given to Chapman with the knowledge of the Smiths.

Chapman objects to paragraphs 5, 6, 7, 8, 9, 11, 12, 13, and 14 as being made without personal knowledge. Paragraph 5 identified the check numbers, the payees, and the amount of the checks, information that Lowe could obtain by reviewing the checks. Lowe could infer that the checks were given to Chapman at paragraph 6 because Stewart's records show Chapman signed for the checks. (See Lowe Exhibit 3). Each of the paragraphs complained of by Chapman is an instance where the affiant's statement is based on her review of Stewart's records and the inferences drawn therefrom, except this affidavit does not show how the affiants knows that Chapman obtained the checks with knowledge of the Smiths, and that part cannot be accepted here.

Chapman further objects that at paragraphs 5, 7, 8, 9, 10, and 14 the affiant

purports to "conclude the intentions of Stewart Title and not herself." Chapman thereby contends that affiant's statement that she is authorized to speak for Stewart Title on this matter is not permitted. But the law is settled that an agent can speak for a corporation. *Ben Weiss,* 271 F.2d at 235.

Chapman also contends that paragraphs 7, 8, 9, 10, 12, 13, and 14 contain conclusory statements. But statements in each of those paragraphs is based on corporate records reviewed by the affiant or inferences drawn therefrom. For example, at paragraph 7 affiant states Stewart understood that Chapman was an agent of Alexander, Cavanaugh & Block, LLC. Affiant's statement there is based on a letter received by Stewart Title purportedly from that firm, a letter appended to the affidavit. Here, the affiant does not seek to prove the truth of the statement made in the Cavanaugh letter. Rather, she introduced the letter to show why the checks were given to Chapman. Chapman further contends that documents produced with the affidavit are not sworn or certified. But the affiant incorporates each document referred to in her affidavit. (Lowe Aff. ¶ 5).

Finally, though Chapman seeks to prevent this affidavit from being considered, Chapman has already admitted that the checks in question were issued, and that he made changes on the checks and deposited them into his Schwab account. (Tr. of February 9, 2001, hearing Chapman ¶ 79). Thus, Chapman cannot claim insufficiency of this affidavit which only confirms what he has already testified to.

### III. *THE SCHWAB MOTION FOR SUMMARY JUDGMENT*

#### *The Pleadings in Chapman's Complaint Against Schwab*

Chapman's Adversary complaint asserts the following causes: Count I—that Schwab violated 11 U.S.C. § 547(b) by improperly transferring $47,276.44 of his property from his Schwab One account; Count II—Schwab has violated the automatic stay provisions of 11 U.S.C. 362(a); Count III Schwab is guilty of "racial profiling" by deliberately targeting blacks for discriminatory treatment; Count IV and VI—Schwab violated 15 U.S.C. § 1692e by deceptively attempting to collect an alleged debt for a third-party and by making an improper debit for $47,276.44 from his Schwab One account; Count V—fraud in the inducement by attempting to deprive Chapman of $47,276.44 of his funds; Count VII—Schwab violated the Uniform Deceptive Trade Practices Act; Count VIII—Schwab breached its fiduciary duty to Chapman; Count IX—breach of contract; Count X—tortuous interference with trade or commerce; Count XI—malicious interference with trade or commerce; Count XII—violation of the Uniform Commercial Code 15 U.S.C. Sections 3–104, *et seq.* (sic); Count XIII—restitution; and Count XIV—violation of unfair and deceptive trade practices laws throughout the country.

The underlying accusation throughout Chapman's complaint is that Schwab converted or blocked funds belonging to him that he deposited in his Schwab One account, and under various theories is liable for turnover of those funds as property of the bankruptcy estate for use in Chapman's Chapter 13 Plan. Schwab's fundamental response is that funds in Chapman's account belonged to others and therefore Chapman had no cognizable legal interest in those funds.

Schwab has now moved for summary judgment on all counts. Because it demonstrated that Chapman had no legal or equitable interest in the claimed funds,

and also showed the lack of merit of Chapman's several theories, the motion for summary judgment was allowed on all counts, and judgment will now be entered in favor of the Schwab defendants on all 14 counts of the Chapman Adversary complaint.

### Standards for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to these proceedings by Rule 7056 Fed.R.Bankr.P., provides that summary judgment is proper when "... the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 7056(c) Fed. R.Bankr.P.; *Russo v. Health, Welfare & Pension Fund, Local 705*, 984 F.2d 762, 769 (7th Cir.1993). The moving party bears the initial burden of showing that there are no triable issues of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). But once the movant meets its burden, the onus is on the non-movant to augment its pleadings and to show that there are genuine issues of material fact that warrant a trial. *Becker v. Tenenbaum–Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir.1990). The non-moving party cannot merely show a scintilla of doubt about the material facts and cannot rest on the accusations in its complaint or conclusory allegations in affidavits. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920–21 (7th Cir.1994).

To determine if a genuine issue of material fact exists the court "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor." *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir.1999) (citation omitted). However, not every conceivable inference must be drawn in favor of the non-moving party; only those inferences are to be drawn that are reasonable and present a sufficient disagreement between the parties. *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir.1995). If the moving party produces affidavits pursuant to Rule 7056(e) and the non-moving party fails to respond by showing specific facts by affidavit or otherwise which show that there are genuine issues for trial, then the court "shall" enter judgment, "if appropriate," for the movant. Rule 7056(e) Fed.R.Bankr.P.

Finally, if the motion for summary judgment is not made upon the whole case, then the court must determine what facts are uncontroverted, by reviewing the pleadings and the evidence before it, and shall issue an order outlining the facts that are uncontroverted which will be applied at trial of the remaining case issues involving the Smiths. Rule 7056(d) Fed. R.Bankr.P.

### Undisputed Facts

Local Bankruptcy Rule 402(M) requires a party moving for summary judgment to file the following: any affidavits in support of its motion pursuant to Bankruptcy Rule 7056(e), a supporting memorandum of law, and a statement of material facts that the moving party contends are undisputed and that entitle the movant to summary judgment as a matter of law. The party opposing summary judgment is required to respond with any opposing affidavits, an opposing memorandum of law, a response to each fact in the movant's 402(M) statement, and any additional facts which would require the denial of the motion for summary judgment. Local Rule 402(N).

■ Compliance with the Local Rules is essential for determination of whether

there are triable issues of fact for trial. *In re Farley, Inc.*, 203 B.R. 681, 684 (Bankr. N.D.Ill.1997) (citation omitted). Schwab complied with Rule 402(M), though it arguably included one legal conclusion in its statement of facts. (See Schwab's Statement of Uncontested Facts ¶ 10 that Chapman did not have title to the funds), though underlying undisputed facts warrant the court to draw that conclusion.

██ Although two months have passed since the motion was filed, Chapman has failed to submit any statement of uncontested facts, any contrary affidavits, any documents, or any other opposing material as required under Local Rule 402(N).

Therefore, the following undisputed facts were established by Schwab:

1. Plaintiff Lamar Chapman, III ("Chapman") is an individual residing in this district at 6106 Elm Lane, Matteson, Illinois. 402(M) ¶ 1.

2. Defendant Charles Schwab & Company, Inc. ("Schwab") is a California corporation engaged in the business of a discount securities broker and has retail and industrial customers both within and outside the United States. 402(M) ¶ 2.

3. Steven Murphy ("Murphy") is employed by Schwab and is a licensed attorney, authorized to practice in the state of California. 402(M) ¶ 3.

4. Craig M. Louie ("Louie") is an employee of Schwab. 402(M) ¶ 4.

5. Beverly C. Smith and Robert E. Smith (the "Smiths") are married individuals who reside in Tinley Park, Illinois. 402(M) ¶ 5.

6. World Point Logistics is the parent company of RISS/USSI. World Point purchased United States Shippers, Inc. ("USSI") In January 1999 and within a year of that purchase also purchased RISS Intermodal.

The two companies were combined to form RISS/USSI which is an intermodal marketing company. An intermodal marketing company is a company which transports freight from one location to another by freight or rail. The work performed by RISS/USSI today is exactly the same work that USSI did prior to being purchased by World Point Logistics in June of 1999. 402(M) ¶ 14.

7. Prior to this lawsuit USSI had never heard of Chapman or any of the related Companies which Chapman says he is associated with, including but not limited to LaSalle Companies. Neither Chapman or LaSalle Companies ever performed any debt reduction work, liability mitigation work, auditing or analyzing of freight, trucking or shipping invoices for overcharges or double charges, nor have they provided any consulting services on ways to reduce rates or alternative ways to ship freight. In fact, the pricing and billing system of USSI prevents billing problems because freight rate charges are determined in advance of any service being provided, and all agreements between USSI and its shippers are done in writing. Without a written agreement specifying the freight rate charge agreed upon, there is no agreement. 402(M) ¶ 15.

8. If Chapman or any of the companies he claims to be associated with had done any work for USSI, such services would have been documented. 402(M) ¶ 19.

9. USSI has no documentation of any work performed by Chapman or any company Chapman says he is associated with having ever performed any services for USSI. 402(M) ¶ 20.

10. USSI is in the business of helping its customers to reduce their shipping costs and the company did not need assistance with debt reduction work, debt mitigation, or auditing or reviewing invoices during the 1990's. 402(M) ¶ 21.

11. USSI makes all payments to trucking firms in writing. Payments are made only after USSI receives an invoice from the trucking company which shows the number of loads transported in a specified period of time. If there is any discrepancy between the rate originally agreed upon and the invoice rate, USSI's internal accounting and operations departments work to resolve the discrepancy. 402(M) ¶ 16.

12. On March 25, 1999, Chapman deposited check No. 079757 (the "Donnelly check") for the amount of $40,378.00 into his Schwab One account. 402(M) ¶ 13. The maker of the check was United States Shippers, Inc. ("USSI") and the check was payable to Donnelly Transportation, Inc. for services Donnelly had performed for USSI. 402(M) ¶ 22. Chapman's name did not appear anywhere on the check and Chapman did not have the authorization of Donnelly to negotiate the check nor did he have any business relationship with Donnelly or speak with anyone at Donnelly before he endorsed the check and deposited it into his account. 402(M) ¶¶ 13, 25.

13. Chapman did not have any business relationship with USSI or any of its agents which would entitle him to the Donnelly check. 402(M) ¶¶ 12–21.

14. The Donnelly check was issued by USSI for services performed by Donnelly. 402(M) ¶ 22. The amount of the check corresponds to invoices submitted by Donnelly for trucking services it provided to USSI. Id. Donnelly reported check No. 079757 as lost and USSI issued a replacement check for the same amount to Donnelly. 402(M) ¶ 23.

15. In the fall of 1999, USSI check No. 079757 which was payable to Donnelly Transportation Inc. for the amount of $40,378 was returned to Frontier Bank (USSI's drawee) because the check contained an unauthorized endorsement. 402(M) ¶ 25. The endorsement on the back of the check was that of the debtor Lamar Chapman III. Id. Frontier confirmed the unauthorized endorsement by obtaining an affidavit from Brian Donnelly, an agent for the payee Donnelly Transportation, Inc., attesting to the fact that he did not know the person (Chapman) who endorsed the USSI check and that the endorsement was made without Donnelly's knowledge or consent. 402(M) ¶¶ 11, 26.

16. Schwab was notified on October 19, 1999 that the $40,378.00 check No. 079757 which Chapman had deposited into his account was being dishonored by the maker of the check United States Shippers, Inc. (USSI) because Chapman's endorsement on the check was unauthorized. 402(M) ¶¶ 11, 28. Schwab became aware of the unauthorized endorsement when it received an Affidavit of Forgery/Unauthorized Signature signed by Brian Donnelly, an agent of Donnelly Transportation. 402(M) ¶ 11.

17. Craig Louie, the Director of Fraud Prevention at Schwab, investigated the claim that the endorsement on the check was unauthorized when the check was returned to Schwab. Louie subsequently determined that the endorsement was not authorized and directed the return of the $40,378 to Frontier Bank 402(M) ¶ 28.

18. On November 5, 1999, Frontier Bank received the sum of $40,378 from First Tennessee Bank (Schwab's depository bank) on behalf of Schwab. 402(M) ¶ 29.

19. On April 5, 1999, Robert E. Smith and Beverly C. Smith (the "Smiths") refinanced their home. As result, Stewart Title issued two checks; the first for $68,510.00 was payable to the Internal Revenue Service ("IRS"). The second check was for $9,350.00 and was payable to Fawn Landscape and Nursery. 402(M) ¶ 30.

20. Chapman obtained possession of the Stewart Title checks and altered the face of the checks by adding "Lamar Chapman III for the Benefit of Robert E. Smith and Beverly C. Smith" above the names of the respective payees of each of the checks. Stewart Title did not authorize this alteration and did not intend for Chapman to be a co-payee on either of the checks. 402(M) ¶ 31.

21. Chapman subsequently deposited the two checks totaling $77,810.00 into his Schwab One account. *Id.*

22. Schwab was subsequently notified that the two checks were altered, and the endorsement on both checks was unauthorized. 402(M) ¶ 32.

23. Schwab restricted access to Chapman's Schwab One Account (the "account") on October 29, 1999, after it was notified that the Donnelly check and the Smiths' checks, totaling $118,238.00, which Chapman deposited into his account contained unauthorized endorsements. 402(M) ¶ 9.

24. Beginning in November of 1999, Schwab refused to honor Chapman's request to withdraw funds from the account. *Id.* Schwab also debited the account for $40,378.00 and transferred the $6,897.09 balance into account ZZTP2231–3146 ("ZZ Account") for safekeeping. *Id.* Schwab was entitled to do that because the USSI check was dishonored and returned, and because its bank informed it that the Stewart Title checks had been altered and returned. Those acts by Schwab in opening the ZZ account were not motivated by Mr. Chapman's race.

25. On April 6, 2000, Chapman filed a 14 count complaint against Schwab. Chapman claimed that Schwab had unlawfully withheld $47,276.44 of his funds without his consent or authorization. Chapman's complaint included various state and federal charges stemming from Schwab's alleged conversion of these funds. 402(M) ¶ 9. However, pursuant to facts set forth in the foregoing undisputed facts, it is found that Chapman is not the owner or entitled to any of the funds remaining in his personal Schwab Account.

**COUNT I (AVOIDANCE OF PREFERRED TRANSFER)**

This count of Chapman's complaint presupposes that he as debtor has

standing to avoid a preferential transfer. Some authority holds that a debtor lacks standing to bring such an action. *See In re Miller*, 251 B.R. 770, 772 (Bankr. D.Mass.2000). However, that issue need not be reached because it is clear on the record presented that Chapman has no legal or equitable interest in the funds in that subject Schwab account. Chapman's estate is only comprised of property interest cognizable under non-bankruptcy law. *In re Baxco Corp.*, 148 B.R. 855, 860 (Bankr.N.D.Ill.1992) (citing *Matter of Sanders*, 969 F.2d 591, 593 (7th Cir.1992)). Property obtained by a debtor's fraud is not part of that debtor's estate. *In re Teltronics Ltd.*, 649 F.2d 1236, 1239 (7th Cir.1981). Therefore, Chapman had the burden to controvert the material presented by Schwab which showed that Chapman did not own and is not entitled to funds in his Schwab account. This he has not done. He offered nothing to show that he had anything other than possession of the checks that he deposited into his Schwab account, and possession alone does not give rise to legal title. *See In re Newpower*, 229 B.R. 691, 697–99 (W.D.Mich.1999), *aff'd in part, rev'd in part, remanded with instructions*, 233 F.3d 922 (6th Cir.2000) (agreeing that embezzled funds are not property of the estate but holding that property purchased with embezzled money is property of estate).

The uncontroverted facts show that USSI did not intend for Chapman to receive the check for $40,378.00, and Stewart Title did not intend for Chapman to alter its drafts and place them in his account. Even assuming *arguendo* that the Smiths owed Chapman as Chapman alleged in complaints against them, funds remaining in the account were never authorized to be taken by him and were never his. Indeed the rightful owner of these funds would prime any the interest of Chapman or his creditors:

If the debtor possesses a stolen diamond ring, the real owner's rights would trump those of a Judgment Creditor, and under the Code therefore would defeat the claims of all of the debtor's creditors whether or not we say the debtor holds the property in "constructive trust" is a detail. Under state law the owner's claims are paramount; the debtor could not defeat those rights by pledging or selling the ring, and the creditors in bankruptcy receive only what the state law allows them.

*Belisle v. Plunkett*, 877 F.2d 512, 515 (7th Cir.1989).

## COUNT II (VIOLATION OF THE AUTOMATIC STAY) AND CHAPMAN'S MOTION UNDER § 547(B)

■ Schwab points out that both the $40,378.00 debit and the $6,897.09 debit occurred before Chapman filed for bankruptcy and therefore it could not have violated the automatic stay before that date. *See In re Avery Health Center, Inc.*, 8 B.R. 1016 (D.C.N.Y.1981) (stay is prospective). Chapman's complaint alleges that Schwab violated the stay by sending a statement indicating that it was holding Chapman's funds under safe keep Account No. 22313146 on March 6, 2000, which was several weeks after Chapman filed his bankruptcy. However, since the funds in Chapman's account were not property of his estate then 11 U.S.C. § 362(a) did not prohibit any acts Schwab would have taken to obtain control of the property. Therefore, even assuming without deciding that issuance of an account statement might violate the stay, the fact that Chapman does not own the account funds in issue prevents any finding that Schwab violated the stay as to that property. Likewise, Chapman's separate motion to avoid the transfer of funds by Schwab under Section

547(b) must also be denied because those were and are not Chapman's funds.

## COUNT III (RACIAL PROFILING)

■ Chapman contends in his complaint that Schwab coded his account to identify that he was an African–American. He brings this Count under § 1981 of the Civil Right Act, 42 U.S.C. § 1981. But Chapman has not presented anything to support this claim. A non-moving party cannot defeat a motion for summary judgment with mere accusations contained in that party's complaint. *Waldridge*, 24 F.3d at 920–21.

■ Cases under § 1981 are governed by the burden-shifting *McDonnell Douglas* test. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Sanghvi v. St. Catherine's Hosp., Inc.*, 258 F.3d 570, 577–78 (7th Cir.2001) (emphasizing the requirement to show pretext under *McDonnell Douglas* test). Plaintiffs must first present a prima-facie case for discrimination by showing that (1) they are a member of a protected class; (2) they attempted to contract with the defendant; (3) the defendant refused to allow the plaintiff to make or enforce a contract because of the plaintiff's race. Once the plaintiff makes out the prima facie case the burden shifts to the defendant to present a non-discriminatory reason for its conduct. If the defendant presents a non-discriminatory bases for its actions then the burden shifts back to the plaintiff to show that the proffered reason is a mere pretext.

■ Chapman has not met his burden to show a prima facie case. Nevertheless, Schwab offered testimony of Craig Louie to show that the reason Chapman's account number was changed from TP–2231–

3146 to ZZTP–2231–3146 was to identify that access to the account was restricted, and that at the time the restriction was made Louie did not know Chapman's race. (See Affidavit of Craig Louie ¶ 9). Schwab also points out that it had the contract right to restrict access to Chapman's account upon having the deposited checks returned unpaid. (See Schwab One Account Agreement ¶ 13 at p. 24). Since Chapman did not meet either his prima facie burden or his rebuttal burden, summary judgment is appropriate.

## COUNT IV and COUNT VI (FAIR DEBT COLLECTION PRACTICES ACT)

■ Schwab avers that it is not a debt collector as defined in 15 U.S.C. § 1692a(6) ("Act"), and therefore is not subject to the provisions of the Act.

There is no need to reach that issue. Chapman alleges in his Complaint that the $40,378.00 debit of his account was an attempt to collect a debt for a third-party. However, the uncontested facts show that Schwab effected the debit to the account in issue upon learning that Chapman had improperly endorsed a check intended for Donnelly. Schwab was merely seeking to protect itself by authorizing its depositary to return the funds to the owner of the check. Thus, there was not an attempt to collect a consumer debt as required by the Act. 15 U.S.C. § 1692(a)(6).

## COUNTS V (FRAUD IN THE INDUCEMENT) VIII (BREACH OF FIDUCIARY DUTY) XI (BREACH OF CONTRACT) AND XIII (RESTITUTION)

■ These Counts are all predicated on Chapman's claim that Schwab converted his funds. Schwab has presented uncontested evidence that the funds were not

owned by Chapman. Chapman had to present evidence which shows that a trial is needed to resolve the issue of who owned the funds, but he did not do so. But after 18 months of litigation Chapman did not controvert any of the facts presented by Schwab as to ownership of the funds in issue. Thus, there is no triable issue with regard to the elements of these claims. Since the funds are not his, Chapman cannot make out a case for breach of contract against Schwab for not returning the property to him. Likewise, Chapman has no basis for restitution of funds that he did not own. Summary judgment is intended to prevent the court from wasting its resources when there are no genuine issues of material fact in question. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548. There are no factual questions as to the ownership of the funds in question which would cause a reasonable factfinder to hold for Mr. Chapman, and therefore summary judgment is appropriate on all of these counts.

## COUNT VII (VIOLATION OF UNIFORM DECEPTIVE TRADE PRACTICES ACT)

The Uniform Trade and Deceptive Practices Act ("Act") is a codification of common law rules against unfair trading practices. *Brooks v. Midas–International Corp.,* 47 Ill.App.3d 266, 5 Ill.Dec. 492, 361 N.E.2d 815, 821 (1977). Subsection 12 of the Act is a catch-all clause which was intended to show that covered unfair trade practices are not limited to acts specified in the statute. *Id.* Subsection 12 prohibits "... any other conduct which similarly creates a likelihood of confusion or of misunderstanding." 815 Ill. Comp. Stat. § 510/2(12).

The Act generally applies to situations where one competitor is harmed or may be harmed by unfair trade practices of another. *Id.* However, consumers may bring a cause of action under the Act if they are "likely to be damaged" in the future. *Greenberg v. United Airlines,* 206 Ill.App.3d 40, 150 Ill.Dec. 904, 563 N.E.2d 1031, 1037 (1990). Damages under the Act are limited to injunctive relief, and costs or attorneys fees or both may be granted where the defendant has willfully engaged in a deceptive trade practice. 815 Ill. Comp. Stat. 510/3. However, Illinois courts have held that money damages are not available under the Act. *Smith v. Prime Cable of Chicago,* 276 Ill.App.3d 843, 213 Ill.Dec. 304, 658 N.E.2d 1325, 1337 (1995); *Greisz v. Household Bank,* 8 F.Supp.2d 1031, 1044 (N.D.Ill.1998) *affirmed by Greisz v. Household Bank,* 176 F.3d 1012 (7th Cir.1999) *Latona v. Carson Pirie Scott & Co.,* No. 96–C–2119, 1997 WL 109979, at *2 (N.D.Ill.1997).

Chapman has failed to show that Schwab engaged in deceptive practices and Schwab's materials show that it did not. Moreover, Chapman has not shown that he is "likely to be damaged" in the future by Schwab's business practices. Considering the record of undisputed facts in a light most favorable to Chapman, any harm that he alleged has already occurred therefore he cannot show a basis for seeking an injunction under the Act. Chapman's pleading does not comport with the remedy provided by the Act because he seeks actual, compensatory, and punitive damages, none of which are allowed under the Act. (See Chapman's Complaint at ¶ 106(b), (c), (f), and (g)).

Therefore, summary judgment is appropriate on Chapman's Act complaint in Count VII.

## COUNT X and COUNT XI (TORTIOUS AND MALICIOUS INTERFERENCE WITH TRADE AND COMMERCE)

A claim for tortious interference with trade or commerce includes the

following elements: (1) existence of a valid and enforceable contract between the plaintiff and a third-party; (2) defendant's knowledge of the existence of that contract: (3) intentional and malicious inducement of breach;(4) Subsequent breach; and(5) damage to the plaintiff. *National Educational Advertising Services, Inc. v. Cass Student Advertising Inc.*, 454 F.Supp. 71, 73 (N.D.Ill.1977) (citations omitted). Schwab's summary judgment materials show prima facie that it did no such things. Chapman has not offered any evidence that shows that he had a contract with a third-party which Schwab was aware of, and that Schwab maliciously interfered with such contract and caused the third-party to breach his contract with Chapman. Chapman merely alleges in his complaint that Schwab contacted his business associates, clients, suppliers, financial institutions, and creditors and that as a result he was irreparably harmed. Chapman has had 18 months to produce evidence of such but failed to do so. Therefore, Schwab is entitled to summary judgment on these counts.

## COUNT XII (VIOLATION OF THE UNIFORM COMMERCIAL CODE)

Mr. Chapman was earlier advised that there is no "15 U.S.C. § 3–104." (See Memorandum Opinion of January 29, 2001). It must be presumed that Chapman is referring to Section 3–104 of the Illinois Commercial Code, which is the Illinois version of the Uniform Commercial Code § 3–104. But Section 3–104 merely defines a negotiable instrument. Chapman's papers state that he negotiated a valid instrument to Schwab and that Schwab subsequently instructed the maker of the instrument "to interfere with, recant or recall its negotiability." (Chapman's verified Complaint ¶ 144). However, the facts of the case as shown by the present record do not square with this allegation. Schwab first became aware that the check was improperly endorsed after the maker of the instrument informed its bank that the check contained an improper endorsement. 402(M) ¶ 28. Therefore, the allegations are contradicted by the uncontested facts presented and Schwab is entitled to summary judgment on this count.

## COUNT XIV (VIOLATION OF UNFAIR AND DECEPTIVE TRADE PRACTICES)

To make out a claim under the Consumer Fraud and Deceptive Business Practices Act (the "Act") the plaintiff must prove (1) a deceptive act or practice, (2) intent on the defendant's part that plaintiff rely on the deception, and (3) that the deception occurred during any transaction involving trade or commerce. *Siegel v. Levy Organization Development Co., Inc.*, 153 Ill.2d 534, 180 Ill.Dec. 300, 607 N.E.2d 194, 198 (1992). As long as the transaction involves trade or commerce, facts that satisfy a common law claim for fraud will also suffice for a claim under the Act. *Id.* at 198. Under either standard the plaintiff must show by a preponderance of the evidence that the defendant made a misrepresentation of fact and engaged in some deceptive practice. *Randazzo v. Harris Bank Palatine*, 104 F.Supp.2d 949, 954 (N.D.Ill.2000); *Cuculich v. Thomson Consumer Electronics, Inc.*, 317 Ill.App.3d 709, 251 Ill.Dec. 1, 739 N.E.2d 934, 940–41 (2000) (discussing the burden of proof under the Act). Schwab's materials contradict the claim, and Chapman failed to offer any evidence to support a claim under the Act in this court. He has not shown any misrepresentation or deceptive practice by Schwab. Schwab did restrict access to funds that Chapman claimed to own. However, the uncontested facts of record

show that Chapman's claim of ownership is hollow, as is his claim under the Act. Therefore Schwab is entitled to summary judgment on this count.

## IV. THE DECISION TO RETAIN JURISDICTION OVER THE ADVERSARY

After the court announced in open court a forthcoming ruling awarding summary judgment to Schwab, Chapman moved for and was granted a dismissal of his Chapter 13 bankruptcy case as a matter of right, since a Chapter 13 debtor has an absolute right to dismiss under § 1307 of the Code. *In re Barbieri,* 199 F.3d 616 (2d Cir.1999). He thereby sought to abort both the Schwab and Smiths litigation after many expensive and hotly contested issues were determined and on the very eve of a long trial set many months ago. For reasons discussed below, the discretion remains to complete the litigation and that discretion will be exercised to do so. Dismissal of a bankruptcy case will usually result in dismissal of related adversary proceedings. *In re Pocklington,* 21 B.R. 199, 202 (Bankr.S.D.Cal.1982). However, dismissal of the bankruptcy case does not automatically strip the bankruptcy court of jurisdiction to hear a pending adversary case. *In re Porges,* 44 F.3d 159, 162 (2nd Cir.1995). A Seventh Circuit panel has stated that the decision to retain jurisdiction over an adversary proceeding after the bankruptcy case has been dismissed is analogous to the decision confronting a district court which must decide whether to retain supplemental jurisdiction once the underlying federal claims are dismissed. *Chapman v. Currie Motors, Inc.,* 65 F.3d 78, 81 (7th Cir.1995). Therefore, the same standards should be applied to determination of whether to retain jurisdiction in bankruptcy as are applied to decisions involving supplemental jurisdiction. *Id.*

Four factors should be considered in deciding whether to retain jurisdiction: (1) judicial economy; (2) convenience to the parties; (3) fairness; and (4) comity. *Porges,* 44 F.3d at 163. These factors weigh strongly in favor of jurisdiction being retained over the present Adversary proceeding. These three consolidated Adversary proceedings have been actively litigated here for 18 months. The parties conducted discovery and the Defendants were obliged to prepare for trial. The trial was scheduled by pretrial orders entered earlier this year to start August 1st. Both the Smiths and Schwab defendants have asked the court to retain jurisdiction over their issues in these adversaries (Schwab to have summary judgment entered, the Smiths to have resolution of the litigation issues in their cases). They want to see this litigation resolved. If the case were now to be restarted by Chapman in state court, or in another bankruptcy court, resources expended in this court by the parties will have been wasted. Moreover, the Smiths now have their personal bankruptcy cases pending before bankruptcy Judge Squires in this District. Thus, if this case is not resolved here, the same issues will undoubtedly be fought anew in that bankruptcy. Indeed, Chapman argued that he wants to refile the Smiths' litigation there.

Such a new proceeding would be inconvenient and expensive to the parties who would then have to re-litigate issues that have been litigated here. It would be unfair to force the Smiths to absorb the costs of continuing this litigation simply because Chapman has opted to dismiss his bankruptcy on the eve of trial. And it would be unfair to impose the burden of re-litigation on a new judge. That is why the Smiths have asked that discretion be exercised to complete the trial work on this case here.

The need to prevent such an unfair result is even more acute where the Smiths are currently seeking to repair their finances in bankruptcy. On the other hand, Chapman has not shown that he will be prejudiced by a decision to retain jurisdiction. The issues are not particularly complex and another judge will not likely bring any special expertise. Nor does this case present issues that are of special importance to the public or to state law, and comity does not dictate allowing the case to be heard in state court. Even if the Smiths dismissed their bankruptcy case, the foregoing relevant factors strongly indicate that jurisdiction of the adversary proceedings should be retained here.

After the intent to go ahead with trial of the Smiths' case was announced from the bench, Mr. Chapman moved to dismiss his Adversary proceedings against them relying in part on the fact that he never moved in the Smiths' bankruptcy case to modify the bankruptcy stay under 11 U.S.C. § 362. Of course, he should have taken that step long ago when the Smiths filed in bankruptcy, and of course, the Smiths should have raised the issue themselves if Chapman did not. Therefore, the action here will be dismissed for that reason unless one of the parties asks and receives in the Smiths' bankruptcy case an order annulling stay as it affects the Adversary complaints against the Smiths in this proceeding. Smiths' counsel stated his intent to seek such an order, but pending his effort to obtain such an order, the Smiths' trial date has been delayed.

## CONCLUSION

Based on the foregoing, Defendant Schwab is entitled to summary judgment on all counts of the Adversary proceeding against it, and final judgment will be entered in Schwab's favor. Chapman's motion for turnover of property held by Schwab has been denied as was his motion to strike the affidavits in support of Schwab's motion for summary judgment. Jurisdiction over the consolidated Adversary cases will be retained to enter the final judgment in Schwab's favor. Chapman's motion to dismiss the Smiths' counterclaim is denied, and the court will retain jurisdiction for trial on both the Chapman complaints and the Smiths' counterclaim, provided that an order be entered in the Smiths bankruptcy case annulling stay so as to validate this Chapman litigation against them. If such order is not entered, the pending Chapman motion to dismiss at least Chapman's complaints against the Smiths will be allowed. However, in that event the question will be considered whether the actions against the Smiths should be dismissed with prejudice or not, and then it would also be decided whether the Smiths' counterclaim should be dismissed or tried here.

Pursuant to Rule 7056 [Rule 56(d) Fed. R.Civ.P.] the Undisputed Facts Nos. 1 through and including 25 set forth hereinabove are found not to be in dispute, and those fact findings have by separate order been deemed binding on the parties to these consolidated litigations and applied to the forthcoming trial. Finally, since Chapman submitted nothing at all in compliance with the Final Pretrial Order, an order was separately entered *in limine* limiting his use of witnesses at trial to himself and those listed by the Smiths, and limiting his documents to those listed by the Smiths and those contained within the filed pleadings.